Affirm in part; Reverse and Remand; Opinion Filed March 29, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

## No. 05-11-00914-CV

---

### DANIEL J. CALLAHAN, Appellant

### V.

### VITESSE AVIATION SERVICES, LLC, Appellee

---

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-05389-L**

---

## OPINION

Before Justices Lang-Miers, Myers, and Richter[1]
Opinion By Justice Myers

This appeal arises from a premises liability lawsuit brought by appellant Daniel J. Callahan against appellee Vitesse Aviation Services, LLC. In four issues, Callahan contends the trial court erred by granting Vitesse's motion for summary judgment. For the following reasons, we affirm in part and reverse and remand in part.

### BACKGROUND AND PROCEDURAL HISTORY

Vitesse leased a private terminal at Dallas Love Field Airport from which it operated a facility for private aircraft. On January 27, 2009, Callahan, an attorney from California, flew in a private jet to Dallas, Texas, to attend a deposition. The jet landed at Love Field and was stored and

---

[1] The Honorable Martin E. Richter, retired Justice, sitting by assignment.

refueled at Vitesse's facility. On the night of January 27, an ice storm hit the Dallas area. On the afternoon of January 28, as he was walking to the jet for the return flight to California, Callahan slipped and fell on a patch of ice.

In April of 2010, Callahan brought a premises liability lawsuit against Vitesse for injuries arising out of the slip and fall that occurred at Love Field. On December 10, 2010, Vitesse filed a motion for summary judgment or, in the alternative, for partial summary judgment. The motion was based on the premises liability claim alleged in Callahan's first amended petition, which was filed several months before Vitesse's motion for summary judgment. On April 4, 2011, Callahan filed a response to Vitesse's motion for summary judgment. The response included Callahan's fifth amended petition, also filed on April 4, 2011, that added negligence per se claims based on alleged violations of the Code of Federal Regulations or, alternatively, the Dallas City Code. Callahan also moved to strike the affidavit of David Peaper—the general manager of Vitesse—that was offered in support of Vitesse's motion for summary judgment.

The motion for summary judgment was heard on April 11, 2011.[2] The trial court granted Callahan's motion to strike Peaper's affidavit, ruling it could not be considered as summary judgment evidence. On April 26, the trial court granted Vitesse's summary judgment motion and dismissed Callahan's causes of action with prejudice. The court's order does not specifically refer to any of Callahan's claims.[3] Callahan subsequently brought this appeal.

## DISCUSSION

Callahan raises four issues in this appeal: (1) the trial court erred by granting summary

---

[2] Callahan filed the fifth amended petition seven days before the court ruled on the summary judgment motion. Neither party, however, disputes that the fifth amended petition was properly before the court.

[3] The order includes a statement that it is a "final appealable judgment."

judgment because the movant, Vitesse, failed to negate the duty element of Callahan's premises liability claim in that it provided no evidence Callahan slipped and fell on naturally-occurring ice; (2) the trial court erred by applying the natural-accumulation rule without considering the "unique facts of this case, including that this slip and fall occurred on a secure airport tarmac"; (3) the court erred by granting summary judgment because Vitesse was required by contract and federal aviation regulations to remove snow and ice from the tarmac; (4) the trial court erred by granting summary judgment because the summary judgment motion did not address Callahan's negligence per se claims.

### Standard of Review

We review de novo the trial court's summary judgment. *Mid–Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.—Dallas 2012, no pet.). When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Beesley*, 358 S.W.3d at 418. The movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the non-movant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Sysco Food Servs.*, 890 S.W.2d at 800. When, as in this case, the court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of

the theories presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003).

### *Objections to the Summary Judgment Evidence*

We first address Callahan's contention that, because the only summary judgment evidence submitted by Vitesse—the affidavit of David Peaper, Vitesse's general manager—was struck by the trial court, the court should have denied the motion for summary judgment altogether because Vitesse failed to meet its burden of proof. Rule 166a(c) of the rules of civil procedure provides that the summary judgment record includes evidence attached either to the motion or the response. *Am. Bd. of Obstetrics & Gynecology, Inc. v. Yoonessi,* 286 S.W.3d 624, 627 (Tex. App.—Dallas 2009, pet. denied). "The proper scope for a trial court's review of the evidence for a summary judgment encompasses all evidence on file at the time of the hearing or filed after the hearing and before judgment with permission of the court." *Judwin Props., Inc. v. Griggs & Harrison,* 911 S.W.2d 498, 503 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also Wythe II Corp. v. Stone,* 342 S.W.3d 96, 112 (Tex. App.—Beaumont 2011, pet. denied); *Am. Bd. of Obstetrics & Gynecology,* 286 S.W.3d at 627; *S. W. Prop. Trust, Inc. v. Dallas Cnty. Flood Control Dist. No. 1,* 136 S.W.3d 1, 6 (Tex. App.—Dallas 2001, no pet.); *Wilson v. Burford,* 904 S.W.2d 628, 629 (Tex. 1995). Although Vitesse's summary judgment evidence was struck by the court, the evidence provided in Callahan's response to Vitesse's motion was proper summary judgment evidence on which both parties could rely, and the trial court could consider this evidence in making its summary judgment ruling. *See Am. Bd. of Obstetrics & Gynecology,* 286 S.W.3d at 627. Having therefore determined what evidence the court could consider with respect to the motion for summary judgment, we turn our attention to whether that evidence conclusively established Vitesse's entitlement to summary judgment.

## Callahan's Claims

Callahan's first amended petition, which was the pleading on file when Vitesse moved for summary judgment, alleged the following negligence/premises liability cause of action:

> As a common carrier in Texas, Defendant owed Plaintiff a duty of higher care. Defendant should have taken steps or additional steps to clear ice from the areas of passenger traffic. Its failure to do so constitutes negligence that proximately caused injury to Plaintiff. The following list is non-exclusive, but Defendant was negligent in the following ways:
>
> > 1. Defendant negligently maintained the passenger walking areas.
> > 2. Defendant negligently failed to remove ice and other hazards, rendering the area unsafe for passenger foot traffic.
> > 3. Defendant failed to properly inspect its premises.
> > 4. Defendant failed to properly warn passengers utilizing its fixed base operation/aircraft terminal.

After Vitesse moved for summary judgment, Callahan amended its pleadings four times.

Callahan's most recent or "live" pleading, the fifth amended petition, alleged four separate counts.

Count one, titled "Negligence (Premises Liability and Negligent Activity)," reads as follows:

> Defendant had obligations to invitee Plaintiff at common law, had obligations to him arising from its lease with the City of Dallas, had obligations to him arising from the Code of Federal Regulations, and, alternatively, had obligations under the Dallas City Code
>
> Defendant should have warned Plaintiff to take steps or additional steps to clear ice from areas of passenger traffic. Its failure to do so constitutes negligence that proximately caused injury to Plaintiff. The following list is non-exhaustive, but Defendant was negligent in the following ways:
>
> > 1. Defendant negligently maintained its tarmac.
> > 2. Defendant negligently failed to remove ice and other hazards, rendering the area unsafe for passenger traffic.
> > 3. Defendant failed to properly inspect its premises.
> > 4. Defendant failed to properly warn passengers utilizing its fixed base operation/aircraft terminal, including the failure to mark or properly mark any so-described designating walkway.
>
> Defendant also engaged in negligent activity when it backed an aircraft out of a hanger in front of Plaintiff and in his walking path immediately as Plaintiff

exited the building. Defendant was negligent in backing the plane at the time and in the manner that it did, and it was negligent in failing to warn Plaintiff about the activity.

Vitesse's lease agreement with the City of Dallas, which is alluded to in count one, provided that Vitesse agreed to "maintain in good repair and in a clean and orderly condition any common areas, taxiways, ramps, public aprons, public access areas, runways and other public areas of the airport essential to Lessee's operations that conform with Lessor's Department of Aviation and applicable Federal Aviation Administration (FAA) construction specifications." The lease required Vitesse to "take all precautions reasonably necessary to promote the safety of its passengers, customers, business visitors and other persons, and employ such means as may be necessary to direct the movement of vehicular traffic in such areas, including, but not limited to, any associated pavement markings that may be necessary."

The three remaining counts of Callahan's fifth amended petition alleged negligence per se claims based on provisions of the Code of Federal Regulations and the Dallas City Code. His second count asserted negligence per se based on 49 C.F.R. §§ 1542.201 and 1542.213 for failing to maintain security on the airport tarmac and to train security personnel, and allowing passengers unescorted access to a secure area within Dallas' Love Field airport. As alleged in the petition, 49 C.F.R. § 1542.201, titled "Security of the Secured Area," reads as follows:

> (a) Each airport operator required to have a security program under § 1542.103(a) must establish at least one secured area.
>
> (b) Each airport operator required to establish a secured area must prevent and detect the unauthorized entry, presence, and movement of individuals and ground vehicles into and within the secured area by doing the following:
>
>> (1) Establish and carry out measures for controlling entry to secured areas of the airport in accordance with § 1542.207.
>> (2) Provide for detection of, and response to, each unauthorized presence or movement in, or attempted entry to, the secured area by

an individual whose access is not authorized in accordance with its security program.

(3) Establish and carry out a personnel identification system described under § 1542.211.

(4) Subject each individual to employment history verification as described in § 1542.209 before authorizing unescorted access to a secured area.

(5) Train each individual before granting unescorted access to the secured area, as required in § 1542.213(b).

(6) Post signs at secured area access points and on the perimeter that provide warning of the prohibition against unauthorized entry. Signs must be posted by each airport operator in accordance with its security program not later than November 14, 2003.

49 C.F.R. § 1542.201. Section 1542.213(b) of title 49, titled "Training," provides that "[a]n airport operator may not authorize any individual unescorted access to the secured area or SIDA [secured identification display area], except as provided in § 1542.5, unless that individual has successfully completed training in accordance with TSA-approved curriculum specified in the security program." 49 C.F.R. § 1542.213(b).

Callahan's third count alleged negligence per se pursuant to 14 C.F.R. § 139.313, titled "Snow and Ice Control," which, as alleged, reads as follows:

(a) As determined by the Administrator, each certificate holder whose airport is located where snow and icing conditions occur must prepare, maintain, and carry out a snow and ice control plan in a manner authorized by the Administrator.

(b) The snow and ice control plan required by this section must include, at a minimum, instructions and procedures for—

(1) Prompt removal or control, as completely as practical, of snow, ice, and slush on each movement area;

(2) Positioning snow off the movement area surfaces so all air carrier aircraft propellers, engine pods, rotors, and wing tips will clear any snowdrift and snowbank as the aircraft's landing gear traverses any portion of the movement area;

(3) Selection and application of authorized materials for snow and ice control to ensure that they adhere to snow and ice sufficiently to minimize engine ingestion;

(4) Timely commencement of snow and ice control operations; and

(5) Prompt notification, in accordance with § 139.339, of all air carriers using the airport when any portion of the movement area normally available to them is less than satisfactorily cleared for safe operation by their aircraft.

(c) FAA Advisory Circulars contain methods and procedures for snow and ice control equipment, materials, and removal that are acceptable to the Administrator.

14 C.F.R. § 139.313.

Count four pleaded a violation of section 43-96 of the Dallas City Code, titled "Removal of

Snow and Ice From Sidewalks Required." As alleged in the petition, it reads as follows:

(a) Every owner, lessee, tenant, occupant or other person having charge of any building or lot abutting upon any public way or public place shall remove the snow and ice from the sidewalk in front of the building or lot.

(b) Snow and ice which falls or accumulates before 4:00 p.m. during any day, except Sunday, shall be removed within three hours after the snow or ice has fallen or accumulated. Snow and ice which falls or accumulates on a Sunday or after 4:00 p.m. and during the night on any other day shall be removed before 10:00 a.m. the following day. (Ord. Nos. 3314; 19398)

DALLAS CITY CODE § 43-96.

Vitesse moved for summary judgment based only on the negligence/premises liability claim

raised in Callahan's first amended petition, which was the pleading on file at the time Vitesse moved

for summary judgment. That claim alleged Vitesse was negligent in maintaining passenger

walkways, in failing to remove ice and other hazards, in failing to properly inspect its premises, and

in failing to properly warn passengers utilizing its "fixed base operation/aircraft terminal." The

summary judgment motion argued that, as a matter of law, Callahan could not recover on this claim

because naturally occurring ice is not an unreasonably dangerous condition.[4] The motion, however,

did not address the other claims in Count 1 of the fifth amended petition that Vitesse was negligent

---

[4] The motion contained only two grounds: (a) "Vitesse is entitled to summary judgment because, as a matter of law, naturally-occurring ice is not an unreasonably dangerous condition"; and (b) "In the alternative, Vitesse is entitled to partial summary judgment that it did not owe Callahan the heightened standard of care that a common carrier owes to its passengers."

when it backed an aircraft out of a hanger in front of Callahan and in his walking path immediately as he exited the building, that Vitesse was negligent in failing to warn him about that activity, and that Vitesse owed Callahan further obligations under the lease agreement with the City of Dallas, the Code of Federal Regulations, and the Dallas City Code. The motion also did not address the claims in Count 2 of the fifth amended petition that Vitesse was negligent because it violated 49 CFR § 1542.201(5) and 49 C.F.R. § 1542.213(b) by failing to train personnel before allowing Callahan unescorted access to a secure area, nor did the motion address the negligence per se claims in Count 3 and Count 4 alleging Vitesse failed to comply with additional obligations owed to Callahan under the Code of Federal Regulations and the Dallas City Code. Vitesse did not amend or supplement its summary judgment motion to address any of these additional claims. The trial court granted summary judgment as to *all* of Callahan's causes of action.

Summary judgment may only be granted based on grounds expressly asserted in the summary judgment motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). Generally, a movant who does not amend or supplement its pending motion for summary judgment to address newly added claims alleged in a subsequent petition is not entitled to summary judgment on those claims. *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam); *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.). In such a case, the portion of the summary judgment purporting to be final must generally be reversed because the judgment grants more relief than requested in the motion. *See Wilson*, 305 S.W.3d at 73; *Blancett*, 177 S.W.3d at 592. Limited exceptions apply to this rule: an amended or supplemental motion for summary judgment is not required when the amended petition essentially reiterates previously pleaded causes of action, when a ground asserted in a motion for summary judgment conclusively

negates a common element of the newly and previously pleaded claims, or when the original motion is broad enough to encompass the newly asserted claims. *Wilson*, 305 S.W.3d at 73 n.13; *Coterill-Jenkins v. Texas Med. Ass'n Health Care Liability Claim Trust*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Vitesse does not dispute that its motion for summary judgment did not address Callahan's later-pleaded claims. But Vitesse argues it was nonetheless entitled to summary judgment as to *all* of Callahan's claims because it conclusively negated the common element of duty, which is a required element of any negligence claim. By negating that element, Vitesse believes it showed Callahan could not recover on any part of the negligence/premises liability claim or any of the other later-pleaded causes of action. In order to address this argument, we therefore examine Callahan's negligence/premises liability causes of action.

### *Removing or Clearing Away Ice From Areas of Passenger Traffic*

In his first three issues, Callahan argues the trial court erred by granting summary judgment because Vitesse did not establish Callahan slipped and fell on "naturally occurring" ice, the trial court erred by applying the so-called "natural-accumulation" rule, and that Vitesse was required by its contract with the City of Dallas and by federal aviation regulations[5] to remove snow and ice from the airport tarmac. To the extent all three of these issues involve an alleged failure to remove or clear away ice from areas of passenger traffic, we address them together.

Premises liability is a special form of negligence in which the duty owed to the plaintiff

---

[5] *See* 14 C.F.R. § 139.313

depends on the plaintiff's status on the premises at the time of the incident. *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). The plaintiff is usually classified as either an invitee, licensee, or trespasser. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999). "An invitee is 'one who enters on another's land with the owner's knowledge and for the mutual benefit of both.'" *American Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (quoting *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)); *see also* RESTATEMENT (SECOND) OF TORTS § 332 (1965). Neither party disputes that, at the time he fell, Callahan was a business invitee.

Premises owners and operators owe a duty to keep their premises safe for invitees against conditions on the property that pose unreasonable risks of harm. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). This duty, however, does not render the premises owner or operator an insurer of the invitee's safety. *See, e.g., Gonzalez*, 968 S.W.2d at 936. To prevail as the invitee plaintiff in a slip-and-fall case, Callahan had to prove (1) actual or constructive knowledge of some condition on the premises by the owner/operator; (2) the condition posed an unreasonable risk of harm; (3) the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Gonzalez*, 968 S.W.2d at 936 (Tex. 1998) (citing *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). Because he was a business invitee, Callahan had to show the ice upon which he fell was an unreasonably dangerous condition. If there was no unreasonably dangerous condition, then, as a matter of law, Vitesse owed Callahan no duty, and he could not recover on his premises liability claim. *See Fair*, 310 S.W.3d at 412-13.

"[N]aturally occurring ice that accumulates without the assistance or involvement of unnatural contact is not an unreasonably dangerous condition sufficient to support a premises

liability claim." *Fair*, 310 S.W.3d at 414; *see also M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 676 (Tex. 2004) (per curiam). A natural accumulation of ice is one that accumulates as a result of an act of nature, and an unnatural accumulation refers to causes and factors other than inclement weather conditions—to causes other than the meteorological forces of nature. *Fair*, 310 S.W.3d at 415. Salting, shoveling, or applying a chemical deicer to a natural ice accumulation does not transform it into an unnatural one. *Id.* at 419. "To find otherwise would punish business owners who, as a courtesy to invitees, attempt to make their premises safe." *Id.* Furthermore, ice that melts and later refreezes is still deemed a natural accumulation. *Id.* at 418.

The summary judgment evidence in this case shows that, shortly before January 28, 2009, the day of the accident, an ice storm hit the Dallas area. An e-mail message from Linton Gray, a line service operator with Vitesse, described the weather condition on the day in question as "icy" and noted "the ramp had started to thaw with the help of ice pellets." Gray's e-mail also stated that "the passenger walked onto the ramp, slipped and fell on what appeared to be a puddle of water," but it turned out to be a "thin sheet of ice." An e-mail from another line service operator, Bryan Mason, read in part:

> On January 28, 2009, at approximately 2 p.m., we had an aircraft staged for departure. It had rained the night before so the ramp was a little icy. As I walked on the ramp I passed one of our guest[s], said hello, then promptly slipped on a small piece of ice but was able to catch myself from falling. At that moment I heard the guest laughing at me. I went to find cones, markers and salt for the ramp, on my way back with the salt I witnessed the same guest falling to the ground in the exact same spot he had previously seen me fall.

He also noted that "the entire ramp was not icy, only small sections." In his deposition, Callahan described the weather that day as "kind of cold and gloomy."

Callahan did not present any controverting summary judgment evidence that the ice resulted from something other than the winter storm. He suggests the ice was not naturally occurring because

it had been "shaped, altered, and modified by human beings" through the use of "additional de-icing" and the application of salt and "solid ice 'pellets.'" He also argues the natural accumulation rule does not apply because he did not fall under "normal circumstances." In support of this contention, he cites the Texas Supreme Court's statement in *M.O. Dental Lab. v. Rape* that "[o]rdinary mud that accumulates naturally on an outdoor concrete slab without the assistance or involvement of unnatural contact is, in *normal circumstances*, nothing more than dirt in its natural state and, therefore, not a condition posing an unreasonable risk of harm." *See M.O. Dental*, 139 S.W.3d at 676 (emphasis added).

These contentions are unpersuasive. First, although we have found no decisions construing the phrase "normal circumstances," the language used by the Texas Supreme Court in its subsequent decision, *Fair*, leaves little room for doubt as to the outcome here:

> Ice in Texas may occur less frequently than mud, but frequency is only one of many factors relevant to our analysis. And, the relative irregularity of icy conditions in this state may weigh against imposing liability. Requiring premises owners to guard against wintery conditions would inflict a heavy burden because of the limited resources landowners likely have on hand to combat occasional ice accumulations Because we find no reason to distinguish between the mud in *M.O. Dental* and the ice in this case, we hold that naturally occurring ice that accumulates without the assistance or involvement of unnatural contact is not an unreasonably dangerous condition sufficient to support a premises liability claim.

*Fair*, 310 S.W.3d at 414 (citations omitted). We also note that a comparison of *Fair* to the summary judgment evidence in this case does not suggest Callahan did not fall under "normal circumstances." In *Fair*, the summary judgment evidence showed that an ice storm hit the Temple area causing ice to accumulate on the defendant's grounds, including the road where the plaintiff fell, and nothing indicated that the ice resulted from something other than the winter storm. *Id.* at 415.

The summary judgment evidence in this case likewise established that the ice in question was a naturally occurring accumulation that did not pose an unreasonable risk of harm. The burden then

–13–

shifted to Callahan to provide summary judgment evidence that the ice did not accumulate naturally. He did not do so. Furthermore, as Vitesse points out in its brief, Callahan had been in the city overnight, traveled throughout the city that day, and walked from his car into Vitesse's building only twenty minutes before exiting the building to walk to the waiting jet. In addition, Callahan did not recall seeing any propellers or hearing jet engines when he was on the tarmac, and his fall occurred just outside of Vitesse's building—three or four steps away, according to Callahan's deposition. And Callahan's complaints regarding the use of salt, ice pellets, or a chemical deicer were also addressed in *Fair*, where the court concluded that salting, shoveling, applying chemical deicer, or allowing thawed ice to refreeze, does not turn a natural accumulation of ice into an unnatural one. *Fair*, 310 S.W.3d at 418-19. Based on *Fair*, we conclude the ice in this case accumulated naturally and did not, as a matter of law, pose an unreasonable risk of harm.

Callahan, however, tries to fit this case within two exceptions discussed in *Fair*. The first is "that a premises owner should be liable when it has 'actual or implied notice that a natural accumulation of ice or snow on his property created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of the conditions generally prevailing in the area.'" *Id.* at 416 (quoting *Cooper v. Valvoline Instant Oil Change*, No. 07AP-392, 2007 WL 3257245, at *5 (Ohio 10th Dist. Ct. App. Nov. 6, 2007)). The Texas Supreme Court explained "that this exception applies only in situations where the ice or snow conceals a defect or hazard that an invitee should not anticipate from his general knowledge of wintery conditions in the area." *Id.* "For instance, the exception would arise when accumulated snow or ice covers a normally open and obvious danger, such as a deep hole in a parking lot or an eight-inch raised concrete bunker." *Id.* But when the complained-of condition "is the slipperiness of the ice itself," that condition does not rise to the level of "unreasonably dangerous" because it is one that is "normally

associated with ice." *See id.* at 417. The same is true in the present case. As in *Fair*, the ice that Callahan slipped on did not conceal any defect—it is the alleged defect.

The second exception is "that the natural accumulation rule does not apply when a landowner is 'actively negligent in permitting or creating an unnatural accumulation of ice or snow.'" *Id.* at 416 (quoting *Cooper*, 2007 WL 3257245, at *5-6). Callahan contends Vitesse was "actively negligent" in using ice pellets and in attempting to make the airport ramp safer. Callahan argues that rather than making the ramp safer this "made it worse" because the ice pellets caused the ice to partially thaw, after which it refroze, and "what was ice now appeared to be water." But as we discussed earlier, salting, shoveling, or applying a chemical deicer to a natural ice accumulation does not transform it into an unnatural one, and ice that melts and later refreezes is still deemed a natural accumulation. *See id.* at 418-19. In *Fair*, the court noted that to "find otherwise would punish business owners who, as a courtesy to invitees, attempt to make their premises safe." *Id.* at 419. Based on the Texas Supreme Court's guidance in *Fair*, we see no evidence in this case that Vitesse's actions made the ice accumulation unnatural. As a result, this second exception does not apply. *See id.*

Callahan's brief also cites six additional exceptions from various jurisdictions that have adopted a similar rule regarding naturally occurring ice. The exceptions were briefly discussed in a lengthy footnote in *Fair* that cited cases from several states. *Id.* at 416 n.6.[6] But the court

---

[6] They are as follows:

1. [P]roperty owners and business operators may be liable for injuries resulting from an accumulation of ice, water, or snow if a plaintiff establishes that the means of ingress or egress was unsafe for any reason other than a natural accumulation of ice, water, or snow.

2. [A] contract to remove snow creates a duty to remove even natural accumulations of snow.

3. [A] voluntary undertaking to remove snow and ice may subject the landowner to liability if the removal is performed negligently.

4. An exception exists 'when the owner undertakes protective measures that heighten or conceal the nature of the naturally-occurring condition, thus making it worse.'

5. A landlord or an invitor 'may become obligated either by agreement or a course of conduct over a period of time to remove

-15-

expressed no opinion on their viability under Texas law. *See id.* No other Texas cases of which we are aware have even considered, much less adopted any of these additional exceptions, and Callahan cites no supporting authority apart from the *Fair* footnote. We thus decline his invitation to apply further exceptions to the general rule regarding naturally occurring ice.

Additionally, Callahan's reply brief discusses at length the case of *Wong v. Tenet Hospitals, Ltd.*, 181 S.W.3d 532 (Tex. App.—El Paso, 2005, no pet.), which noted:

> The determination of whether a particular condition poses an unreasonable risk of harm is generally fact specific. In general, reasonableness determinations are highly fact intensive and involve issues well suited for a jury. There is no definitive, objective test that may be applied to determine whether a specific condition presents an unreasonable risk of harm.

*Id.* at 539. Callahan relies on this language to suggest there is a triable issue of fact regarding whether "the conditions on this icy and slippery ramp posed an unreasonable risk of harm." But the court's analysis in *Wong* was actually focused on deciding whether the shrub on which the plaintiff tripped was (or was not) a natural condition:

> In the case before us, the distressed shrub was not in its natural state as was asserted about the condition of the mud in *M.O. Dental Lab. See id.* In *M.O. Dental Lab,* the mud was naturally accumulating, whereas in this case, Tenet Hospitals specifically planted the shrubs as part of their landscaping scheme. There was no evidence regarding the reason the bush was in a distressed state. In that regard, we do not agree with Tenet Hospitals' assertion that the demise of the plant was nothing more than a natural condition. The analogy Tenet Hospitals attempts to make that the shrub in this case is the same as the mud on the "man-made concrete slab" fails.

*Id.* at 538-39. The court, in other words, rejected the hospital's analogy that a landscaped shrub was just as "natural" of a condition as the mud that accumulated on the slab after the rain storm in *M.O.*

---

snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe.'

6. An exception arises when 'it [is] shown that although the landlord did not expressly agree to perform the duty of removal, he obligated himself to do so by his course of conduct over a period of time.'

*Id.* (citations omitted).

−16−

*Dental Lab. v. Rape*. *See id*. The *Wong* court nonetheless concluded that the shrub was not an unreasonably dangerous condition for which Tenet Hospitals could be held liable, and affirmed the no-evidence summary judgment in the hospital's favor. *Id*. at 539-40. *Wong*, therefore, does not alter our analysis in the present case—or our conclusion that the naturally occurring ice was not an unreasonably dangerous condition. *See Fair*, 310 S.W.3d at 414.

Notwithstanding the settled Texas authority regarding naturally occurring ice, Callahan points out in his brief that the so-called "natural accumulation" rule, also known as the "Massachusetts" rule,[7] has been rejected in Massachusetts and other jurisdictions. *See, e.g., Papadopolous v. Target Corp.*, 457 Mass. 368, 930 N.E.2d 142, 143 (Mass. 2010) ("We now abolish the distinction between natural and unnatural accumulations of snow and ice, and apply to all hazards arising from snow and ice the same obligation of reasonable care that a property owner owes to lawful visitors regarding all other hazards"). Even so, however, the law in Texas remains that a natural accumulation of ice is not unreasonably dangerous for purposes of premises liability, and we are not free to abrogate or modify established precedent. *See Lubbock Co. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

The only remaining question is whether Vitesse's motion for summary judgment was broad enough to reach all of the negligence allegations contained in count one of Callahan's fifth amended petition, which both parties agree was properly before the court. We conclude the trial court did not err by granting summary judgment as to the negligence allegations in count one that Vitesse (1) negligently maintained its tarmac, (2) negligently failed to remove ice and other hazards, (3) failed to properly inspect its premises; and (4) failed to properly warn passengers utilizing its "fixed base

---

[7] *See, e.g., Griffin v. 1438, Ltd.*, No. 02-03-255-CV, 2004 WL 1595787, at *3 (Tex. App.—Ft. Worth July 14, 2004, no pet.) (mem. op.) (citing *Woods v. Naumkeag Steam Cotton Co.*, 134 Mass. 357 (1883))

–17–

operation/aircraft terminal." All of these allegations—virtually identical to claims asserted in the first amended petition—are precluded by the general rule that naturally occurring ice does not, as a matter of law, constitute an unreasonably dangerous condition, which was the basis for Vitesse's motion for summary judgment. As the Texas Supreme Court made clear in *Fair*, there is no claim for failing to remove or clear away ice from areas of passenger traffic under the circumstances of this case because the ice accumulated naturally and, thus, did not pose an unreasonable risk of harm. *See Fair*, 310 S.W.3d at 414.[8]

But the motion for summary judgment did not address the other claims asserted in count one of the fifth amended petition that Vitesse was negligent when it backed an aircraft out of a hanger in front of Callahan and in his walking path immediately as he exited the building, that Vitesse was negligent in failing to warn him about that activity, and that Vitesse owed Callahan additional obligations under the lease agreement with the City of Dallas, the Code of Federal Regulations, and the Dallas City Code. Based on our reading of the motion for summary judgment, Callahan's pleadings, and the decision in *Fair*, we conclude the motion was simply not broad enough to reach these later-pleaded claims because they are not, as pleaded, based on a common law claim of alleged failure to remove or clear away ice from areas of passenger traffic. And as we noted earlier, unaddressed issues or claims cannot be a basis for summary judgment. *See, e.g., Chessher*, 658 S.W.2d at 564. Accordingly, we overrule the first, second, and third issues in part, and sustain them in part.

### Negligence Per Se Claims

---

[8] Vitesse's motion for summary judgment did not actually cite *Fair*, relying instead on the court's previous decision in *M.O. Dental Lab. v. Rape*, 139 S.W.3d at 676. But in a supplemental authority filed ten days after the motion for summary judgment, Vitesse cited *Fair*, 310 S.W.3d at 415, and stated, "This year, the Texas Supreme Court extended its holding in *M.O. Dental* to hold that naturally accumulating ice is not an unreasonably dangerous condition as a matter of law."

In his fourth issue, Callahan contends the trial court erred by granting summary judgment because the motion for summary judgment did not address Callahan's negligence per se claims. We agree.

Vitesse argues it was entitled to summary judgment as to *all* of Callahan's claims, despite the fact that its motion for summary judgment addressed only the negligence/premises liability claim asserted in Callahan's first amended petition, because (1) the motion for summary judgment specifically challenged the common element of duty, which is a required element of any negligence claim; and (2) negligence per se is not a separate cause of action that exists independently of a common-law negligence claim—it is just one method of proving a breach of duty. *See Williams v. Sable*, No. 14-09-00806-CV, 2011 WL 238288, at *3 (Tex. App.—Houston [14 Dist.] Jan. 25, 2011, no pet.) (mem. op.) (citing *Thomas v. Uzoka,* 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)); *see also Zavala v. Trujillo,* 883 S.W.2d 242, 246 (Tex. App.—El Paso 1994, writ denied).

Negligence per se is a common law tort concept in which a duty is based on a standard of conduct created by a statute rather than on the reasonably prudent person test used in "pure" negligence claims. *See Smith v. Merritt,* 940 S.W.2d 602, 607 (Tex. 1997). As more fully explained by the Texas Supreme Court, "[n]egligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person," and "[i]n such a case the jury is not asked to judge whether or not the defendant acted as a reasonably prudent person would have acted under the same or similar circumstances" because "the statute itself states what a reasonably prudent person would have done." *Carter v. William Sommerville and Son, Inc.,* 584 S.W.2d 274, 278 (Tex. 1979). In a negligence per se action, "the trial court merely has the fact finder decide if the tortfeasor committed the act proscribed by the

statute and if the act proximately caused injury." *Borden, Inc. v. Price,* 939 S.W.2d 247, 250 (Tex. App.—Amarillo 1997, writ denied).

The *Fair* decision was based on a duty imposed by common law, and the common law, as determined by *Fair,* does not allow a claim for failing to remove or clear away ice from areas of passenger traffic under these circumstances. *See Fair,* 310 S.W.3d at 414. But while Callahan's negligence per se claims broadly related to a failure to remove or clear away ice, they are based on asserted violations of specific federal and local airport safety regulations. *See* 49 C.F.R. § 1542.201 (explaining that airports are required to "prevent and detect the unauthorized entry, presence, and movement of individuals" from an airport's secured areas); 14 C.F.R. § 139.313 (requiring airports located where snow and icing conditions occur to "prepare, maintain, and carry out a snow and ice control plan"); DALLAS CITY CODE § 43-96 (requiring building owners, lessees or tenants to "remove the snow and ice from the sidewalk in front of the building or lot."). As alleged by Callahan, these regulations purport to create different duties than the common law. Vitesse's summary judgment motion, however, was based on the common law duty discussed in *Fair.* Because it did not address or even contemplate any purported statutory obligations, we cannot say the motion was broad enough to reach the later-pleaded negligence per se claims.[9]

In reaching this conclusion, we distinguish the case of *Lampasas v. Spring Center, Inc.,* which Vitesse cites in its reply brief. In *Lampasas v. Spring Center, Inc.,* an amended petition filed after the summary judgment motion asserted new variations (also pleaded as negligence) of the original petition's negligence claim. 988 S.W.2d 428, 435 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The rule 166a(i) motion had alleged there was no evidence of duty, breach, or causation to

---

[9] Although we conclude Vitesse's summary judgment motion was not broad enough to reach the later-pleaded claims, we express no opinion regarding their viability under municipal, state, or federal law.

support the original negligence claim—elements that were common to any negligence claim pleaded in any petition—and the non-movant produced no evidence of these elements. *Id.* at 436-37. Hence, summary judgment was proper on all of the plaintiff's claims. *Id.* at 437. The present case differs from *Lampasas*, where the court concluded that all of the plaintiff's negligence claims shared common elements that were addressed by the motion for summary judgment. Other analogous cases on which Vitesse relies are likewise distinguishable because, in each of them, the summary judgment motion attacked an element that was common to all of the plaintiff's claims.[10] We sustain Callahan's fourth issue.

## *Conclusion*

Accordingly, we affirm the trial court's judgment in part; reverse and remand it in part.

We affirm the trial court's summary judgment as to the negligence/premises liability allegations in count one of Callahan's fifth amended petition that Vitesse (1) negligently maintained its tarmac; (2) negligently failed to remove ice and other hazards; (3) failed to properly inspect its premises; and (4) failed to properly warn passengers utilizing its "fixed base operation/aircraft terminal."

But we reverse the court's summary judgment as to Callahan's claims (1) that Vitesse was negligent when it backed an aircraft out of a hanger in front of Callahan and in his walking path

---

[10] In *Judwin Properties, Inc. v. Griggs & Harrison*, for example, a law firm sued a client to recover for services rendered. 911 S.W.2d 500 (Tex. App.–Houston [1st Dist.] 1995 no writ). In response, the client asserted a counterclaim based on the firm's alleged disclosure of confidential and privileged information through the statement of services that had been attached to the firm's petition. *Id.* The firm filed a traditional summary judgment motion, asserting it conclusively negated the element of damages for each of the client's causes of action. *Id.* at 501. Before the summary judgment hearing, the client amended its counterclaim, alleging the same facts that supported his original counterclaim but adding that the firm's conduct constituted a breach of contract, breach of implied warranty, breach of fiduciary duty, negligence, and gross negligence. *Id.* The trial court granted the firm's summary judgment motion. *Id.* On appeal, the client argued the court improperly granted the firm's motion because his counterclaims for breach of implied warranty, breach of fiduciary duty, and negligence were not addressed in the firm's motion. *Id.* But the appellate court affirmed the summary judgment on the additional claims, holding that, because the client's factual allegations of damages made in the original counterclaim were, "on their face, couched in tort, contract, and breach of fiduciary duty," the firm's summary judgment motion contemplated the claims eventually specified in the client's amended counterclaim. *Id.* at 503. In *Williams v. Sable*, 2011 WL 238288, the plaintiff sued for negligence, negligence per se, and gross negligence, and the negligence per se claim was based on an alleged violation of a Houston city ordinance. *See id.* at *1. The court noted that each of these claims included the element of proximate cause, and that by conclusively negating the foreseeability component of proximate cause, the movant showed he was entitled to summary judgment as to each of the plaintiff's claims. *Id.* at *4-5.

-21-

immediately as he exited the building; (2) that Vitesse was negligent in failing to warn Callahan about that activity; (3) that Vitesse owed Callahan additional obligations under the lease agreement with the City of Dallas, the Code of Federal Regulations, and the Dallas City Code; and (4) the negligence per se claims asserted in counts two, three, and four of the fifth amended petition. We remand these claims to the trial court for further proceedings.

_____
LANA MYERS
JUSTICE

110914F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DANIEL J. CALLAHAN, Appellant

No. 05-11-00914-CV      V.

VITESSE AVIATION SERVICES, LLC, Appellee

Appeal from the 193rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. 10-05389-L).
Opinion delivered by Justice Myers, Justices Lang-Miers and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED IN PART** and **REVERSED IN PART**.

We **REVERSE** the portion of the trial court's judgment as to appellant **DANIEL J. CALLHAN'S** claims that appellee **VITESSE AVIATION SERVICES, LLC** (1) was negligent when it backed an aircraft out of a hanger in front of Callahan and in his walking path immediately as he exited the building; (2) was negligent in failing to warn Callahan about that activity; (3) that Vitesse owed Callahan additional obligations under the lease agreement with the City of Dallas, the Code of Federal Regulations, and the Dallas City Code; and (4) the negligence per se claims asserted in counts two, three, and four of Callahan's fifth amended petition. We **REMAND** these claims to the trial court for further proceedings. We **AFFIRM** the trial court's judgment in all other respects. It is **ORDERED** that each party bear its own costs on appeal.

Judgment entered March 29, 2013.


_____
LANA MYERS
JUSTICE