**Affirmed and Opinion Filed July 30, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00441-CV

### RAMONA SIMIEN, Appellant
### V.
### LA QUINTA INN & SUITES, Appellee

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-12796**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Partida-Kipness

Appellant Ramona Simien appeals from the trial court's summary judgment

for appellee La Quinta Inn & Suites. Simien sued La Quinta for injuries she allegedly

suffered from being subjected to cigarette smoke and pet urine odors while staying

at a La Quinta location in Dallas, Texas. La Quinta moved for no-evidence summary

judgment on Simien's claims, and the trial court granted La Quinta's motion. We

affirm the trial court's judgment.

# BACKGROUND

In June 2016, Simien traveled with her parents, sister, and brother-in-law from her home in Fresno, Texas, to attend a wedding in Dallas, Texas. In preparation for the trip, Simien's brother-in-law booked two suites, one for Simien and one for the remaining individuals, at a La Quinta hotel in Dallas. When Simien and her family arrived on June 25, 2016, Simien confirmed with the front desk clerk that her assigned room was non-smoking and not near any pets. Simien alleges that she also "went through [her] medical history," which includes kidney disease, diabetes, and asthma, with the clerk. She was initially sent to the wrong room. She returned to the front desk and was directed to the correct room, which the clerk assured was non-smoking and clean.

Simien, her sister, and her brother-in-law went to the assigned suite. Simien contends that upon entry, she noticed the room smelled like cigarette smoke and pet urine, and there was pet hair on the furniture. Her sister and brother-in-law agreed. The three of them returned to the front desk to complain about the odor and pet hair and ask if Simien could be moved to another suite. The front desk clerk said there were no other suites available. Simien told the clerk that she would be away at the wedding for several hours and asked that the room be cleaned while she was away. The clerk assured Simien that she would have the room cleaned. Simien returned to the room to change clothes for the wedding, and she and her family left. She stopped

by the front desk to inform the clerk that she was leaving. The clerk again confirmed that she would have the room cleaned while Simien was out.

After the wedding, Simien returned to her room at approximately 12:45 a.m. on June 26, 2016. She claims that the room still smelled of cigarette smoke and pet urine, but she also smelled "something was sprayed in the room," "like an air freshener." Thus, she concluded the hotel staff did not clean the room as promised but merely sprayed air freshener. Simien did not complain that the room was still unclean or request another room but went to bed because it was late, and she was tired.

She contends that when she awoke the next day, she was "congested and could barely breathe" and her face was "a little swollen." She also contends that she started running a fever during the night. Simien and her family ate breakfast and left the hotel. She did not complain about the room again before leaving. Despite feeling ill, Simien went to work the following day. While at work, Simien began feeling worse, and a co-worker took her to the doctor. Simien complained of a fever, difficulty breathing, and a headache. The doctor diagnosed her with an acute upper respiratory infection and prescribed an antibiotic. Simien contends that she missed work the entire week due to the illness. She further contends that her headaches continued after completing the antibiotic.

A month after the wedding, on July 25, 2016, Simien went to the emergency room complaining of a headache and that she could not "move [her] neck." The

emergency room doctors prescribed pain medication and recommended that she see a neurologist. She saw her neurologist on July 27, 2016. According to Simien, her neurologist "explained that [her] neck had locked due to a migraine. The acute upper respiratory infection triggered the migraine." Simien's neurologist administered injections into Simien's neck to address her "locked" neck. Simien claims no further illness or injury arising from her hotel stay.

Simien sued La Quinta on June 25, 2018, for negligence and premises liability. Her negligence claim arises from La Quinta's alleged failure "to properly clean [her] room when notified of the hazards in the room." Her premises liability claim similarly arises from La Quinta's failure to "exercise reasonable care to reduce or eliminate the risk" posed by the "dangerous condition [that] existed on [La Quinta's] premises." According to Simien's original petition, the allegedly dangerous condition is that "[t]he room was a smoking room and smelled of dog urine."

La Quinta filed its motion for no-evidence summary judgment on both claims. On Simien's negligence claim, La Quinta contended that Simien had produced no evidence of any affirmative act by La Quinta that led to her injury. Rather, Simien had alleged only that La Quinta failed to act, which cannot support a negligence claim. Moreover, La Quinta's act of cleaning the room was not contemporaneous with Simien's alleged injury, as required to prevail under a negligence theory. As to Simien's premises liability claim, La Quinta contended that Simien produced no

evidence that the alleged condition created an unreasonable risk of harm. Specifically, La Quinta contended that Simien produced no evidence that there was actual cigarette smoke or dog urine in the room or that "the scent of smoke and dog urine creates an unreasonable risk of harm." La Quinta further contended that she had produced no evidence that La Quinta did not use reasonable care to reduce or eliminate any such risk.

Simien filed a response to La Quinta's summary judgment motion and offered her deposition transcript and medical records as evidence. Her response, however, addressed only her premises liability claim. She did not address La Quinta's motion regarding her negligence claim. As to her premises liability claim, Simien argued that there was evidence that she "requested the room be cleaned, and that the room was not cleaned, or cleaned inadequately or improperly," and that "the unsanitary nature of the room" caused her alleged injury. She specifically alleged "[t]he unreasonably dangerous condition of the premises was the room full of smoke, pet hair and urine." She further alleged that La Quinta "was placed on notice of the defective nature of the room" when she "explained why a room free of smoke, pet hair and urine was necessary because of her health issues," and that she believed the room was not cleaned but "only sprayed with air freshener." The trial court conducted a hearing and granted La Quinta's motion. This appeal followed.

## STANDARD OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id*.; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX. R. CIV. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417,

424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

"More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions.'" *Chapman*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## ANALYSIS

In one issue, Simien contends that the trial court erred in granting summary judgment on her premises liability claim because there is sufficient evidence she was injured by an unreasonably dangerous condition on La Quinta's property.[1] La Quinta contends, however, that Simien failed to raise a genuine issue of material fact on the existence of an unreasonably dangerous condition and La Quinta's reasonable efforts to reduce or eliminate any such risk. La Quinta further contends that Simien waived her challenge to La Quinta's use of reasonable efforts by failing to brief the issue.

---

[1] Simien sued La Quinta on premises liability and negligence theories. La Quinta moved for no-evidence summary judgment on both theories. Simien did not file a response as to her negligence claim and does not contest the trial court's judgment with respect to this claim. *See* TEX. R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). Accordingly, Simien has waived error as to judgment on her negligence claim. TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009).

The parties agree that Simien was an invitee at the time and place of the alleged injury. *See Callahan v. Vitesse Aviation Servs., LLC*, 397 S.W.3d 342, 351 (Tex. App.—Dallas 2013, no pet.) (invitee is one who enters on another's premises with the owner's knowledge and for the mutual benefit of both). For an invitee to prevail on a premises liability claim, the claimant must prove (1) the owner or operator of the premises had "actual or constructive knowledge of some condition on the premises"; (2) "the condition posed an unreasonable risk of harm"; (3) "the owner/operator did not exercise reasonable care to reduce or eliminate the risk"; and (4) "the owner/operator's failure to use such care proximately caused the plaintiff's injuries." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). A condition presenting an unreasonable risk of harm is one in which there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). Only the second and third elements of Simien's claim are at issue.

## I.      Unreasonably Dangerous Condition

La Quinta argued in its motion for no-evidence summary judgment that Simien had produced no evidence of a condition on its property that created an unreasonable risk of harm. In her response to La Quinta's motion, Simien described the unreasonably dangerous condition as a "room full of smoke, pet hair and urine."

This is not, however, what she alleged in her original petition. In fact, Simien's petition does not specifically identify the allegedly dangerous condition but alludes to the "defect" as a room "that had been smoked in and was dirty." Her factual recitation states, "The room was a smoking room and smelled of dog urine . . . ." Thus, Simien alleged the odor of cigarette smoke and dog urine was the unreasonably dangerous condition. In response to La Quinta's motion, Simien had to produce more than a scintilla of evidence to raise a fact issue as to whether this allegation was true. *See Smith*, 288 S.W.3d at 424.

In response to La Quinta's motion, Simien offered medical records and a transcript of her deposition. Simien's medical records indicate that she was diagnosed with an "acute upper respiratory infection" on June 27, 2016, one day after her stay at the La Quinta. According to Simien, this infection was caused by the odor of cigarette smoke and dog urine in her hotel room, which posed an unreasonably dangerous risk because of her underlying medical conditions. She contends that La Quinta was made aware of this risk through her discussion with La Quinta's front desk clerk. Simien testified in her deposition that she asked the front desk clerk to make sure she was assigned a non-smoking room and "was not by any pet or had any pet hair in the room." She contends that the clerk told her that the room was non-smoking and had been cleaned. She claimed that she also "went through [her] medical history" and told the clerk that she had kidney disease and asthma and was diabetic. According to Simien, this was sufficient to put La Quinta

on notice that the odor of cigarette smoke and dog urine presented an unreasonably dangerous risk to her. We disagree.

Simien cites no evidence indicating how the allegedly offensive odors posed an unreasonably dangerous risk. Although she alleges that she told the clerk about her various medical issues, she does not explain or offer evidence to show that these medical conditions created an unreasonable risk of her developing an acute upper respiratory infection from exposure to the odors. Indeed, the only evidence in the record that connects the odors to her infection is Simien's deposition testimony in which she testified that her doctor "assumed" the infection was a reaction to the odors. However, she does not direct us to where among her medical records we can find this "assumption," and our review of the record has not produced any such medical record. Simien's self-serving statement is so weak as to merely create suspicion of a fact and is less than a scintilla of evidence, *see Chapman*, 118 S.W.3d at 751, and she offers no other evidence to show how La Quinta should have been aware of any unreasonable risk posed by the odors solely from her conversation with the front desk clerk, *see Keetch*, 845 S.W.2d at 264 (the owner or operator of the premises must have actual or constructive knowledge of the condition).

## II. Exercise of Reasonable Care

Simien's petition alleged that La Quinta "failed to remedy the defect when warned by [her]" and "failed to properly clean [her] room when notified of the hazards in the room," presumably referring to the "defect" previously discussed. Her

factual recitation states, "Plaintiff requested a clean-up or another room, and the Defendant failed to adequately remedy the condition." Thus, she alleged that La Quinta failed to take "reasonable care to reduce or eliminate the risk" because "the room was not cleaned, or cleaned inadequately or improperly." La Quinta moved for summary judgment on the ground that Simien produced no evidence to raise a genuine issue of material fact as to this allegation.

La Quinta contends on appeal that Simien has waived her right to challenge summary judgment on this ground by not raising the issue in her brief. Failure to brief one of the grounds for summary judgment waives error as to the granting of that ground for summary judgment. *In re Estate of Bendtsen*, 230 S.W.3d 823, 826 (Tex. App.—Dallas 2007, pet. denied); *see also St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020) ("[C]ourts of appeals retain their authority to deem an unbriefed point waived in lieu of requesting additional briefing."). However, we "liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants." *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 316 (Tex. 1999). Accordingly, we address Simien's issue regarding La Quinta's exercise of reasonable care.

"Premises owners and occupiers owe a duty to keep their premises safe for invitees against known conditions that pose unreasonable risks of harm." *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 764–65 (Tex. 2009) (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000)). "The duty is to 'take

–11–

whatever action is reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risk from that condition.'" *Id*. (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)).

Simien alleges that the room still smelled of cigarette smoke and dog urine when she returned from the wedding in the early hours of June 26, 2016, despite the front desk clerk's promise the room would be cleaned. However, when asked in her deposition "[w]hat was the first thing [she] noticed when [she] got back to [her] room," Simien said, "That I smelled a spray of some sort." When pressed further, Simien stated, "I can smell something was sprayed in the room. . . . Like an air freshener, it was a different smell. It was something that I felt was sprayed in the room." When asked whether she assumed that housekeeping had been in the room because of the "different smell," Simien said she "assumed that somebody came to the room and sprayed something, because [she] still smelled the cigarette and the urine." Her own admission is evidence that La Quinta attempted to address the allegedly offensive odors.

The question remains, whether La Quinta took "reasonably prudent" actions under the circumstances to reduce or eliminate the risk at issue. *See id*. Simien offered no evidence beyond her alleged discussion of her medical issues with the front desk clerk to show La Quinta's actions were not "reasonably prudent." As we previously noted, this discussion was insufficient to raise a fact question as to La Quinta's knowledge of an unreasonably dangerous condition. It is likewise

insufficient to raise a fact question as to whether La Quinta took reasonably prudent actions to reduce or eliminate the condition. Moreover, Simien offered no other evidence of what actions La Quinta took or should have taken. And her testimony implying that she "felt" like La Quinta merely sprayed an air freshener instead of cleaning the room creates no more than mere surmise or suspicion of the fact. *See Chapman*, 118 S.W.3d at 751.

Additionally, the record reflects that Simien was aware of the alleged risk posed by the odors when she stayed in the room, thus making the condition open and obvious and alleviating La Quinta of its duty to make safe or warn. A landowner typically has a duty to either make safe or warn of concealed, unreasonably dangerous conditions on its premises because landowners are typically in a better position than invitees to discover such conditions. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015). However, when an invitee is aware of a dangerous premises condition, either because the danger is obvious or the landowner provided an adequate warning, "the condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises." *Id*. Thus, we "typically characterize[] the landowner's duty as a duty to make safe or warn of unreasonably dangerous conditions that are not open and obvious or otherwise known to the invitee." *Id*. Although there are exceptions to this general rule, Simien

did not plead any such exceptions. Simien contends that the odors created an unreasonably dangerous condition. The record reflects that Simien had encountered the allegedly offensive odors three times before staying the night in the room: at check-in, when changing clothes, and when retuning from the wedding. The alleged unreasonably dangerous condition was, thus, open and obvious to Simien, and La Quinta had no duty to make safe or warn of the condition. *Id.*

On the record before us, we conclude that Simien failed to present more than a scintilla of probative evidence to raise a genuine issue of material fact and overcome La Quinta's motion for no-evidence summary judgment. *Smith*, 288 S.W.3d at 424. Accordingly, we overrule Simien's sole issue on appeal.

## CONCLUSION

In response to La Quinta's motion for no-evidence summary judgment, Simien was required to produce more than a scintilla of probative evidence to raise a fact question as to whether the odor of cigarette smoke and dog urine posed an unreasonably dangerous risk and whether La Quinta took reasonably prudent actions to remedy or reduce that risk.

Having concluded that Simien failed to produce sufficient evidence to meet this standard, we overrule her sole issue on appeal and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200441F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RAMONA SIMIEN, Appellant

No. 05-20-00441-CV    V.

LA QUINTA INN & SUITES,
Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-12796.
Opinion delivered by Justice Partida-
Kipness. Justices Myers and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee LA QUINTA INN & SUITES recover its costs of this appeal from appellant RAMONA SIMIEN.

Judgment entered July 30, 2021.