

# NUMBER 13-23-00532-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MIHAIL CHRISSOS A/K/A
MIHAIL CHRYSSOS AND
MARIA CHRISSOS A/K/A
MARIA CHRYSSOS,                                                        Appellants,

v.

PLAINSCAPITAL BANK,                                                      Appellee.

## ON APPEAL FROM THE 105TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

In fifteen issues, which we reorganize and renumber as eleven issues with sub-issues, appellants Mihail Chrissos a/k/a Mihail Chryssos and Maria Chrissos a/k/a Maria Chryssos appeal the trial court's order granting appellee PlainsCapital Bank's (PCB)

combined traditional and no-evidence motions for summary judgment. We affirm in part and reverse and remand in part.

## I.    BACKGROUND[1]

In 2007, appellants executed a commercial promissory note with First National Bank (FNB) in the amount of $828,000.00 and a related deed of trust concerning commercial property in Jim Wells County. In 2009, appellants entered into a modification agreement concerning their payment schedule of the note. In 2013, PCB acquired the promissory note, deed of trust, and the modification agreement. Appellants subsequently defaulted on the note on July 24, 2017, and August 24, 2017. On August 29, 2017, PCB sent appellants a notice of default informing them that "[t]he failure to cure the defaults on or before ten (10) days after the date of this letter may result in the acceleration of all sums secured by the [d]eed of [t]rust . . . as well as the sale of the [p]roperty." On October 12, 2017, PCB sent appellants a formal notice of acceleration, which stated:

> If the entire balance due on the [n]ote, including default interest and all costs and fees incurred in enforcing [PCB]'s rights under the [n]ote, and all other sums due pursuant to the [l]oan [d]ocuments are not paid in full immediately, [PCB] may pursue its available remedies set out in the [n]ote and the [l]oan [d]ocuments.
>
> The acceptance by [PCB] of any payment in an amount less than the full amount required to cure the defaults will be an acceptance on account only, and the failure to pay the full amount required shall be and continue to be a default.

---

[1] The instant case is the second appeal involving the parties. *See Chrissos v. PlainsCapital Bank*, No. 13-21-00271-CV, 2022 WL 17492276 (Tex. App.—Corpus Christi–Edinburg Dec. 8, 2022, no pet.) (mem. op.) (reversing the trial court's judgment ordering death penalty sanctions where the conduct complained of could not be sufficiently attributed to the party).

2

On October 17, 2017, PCB sent appellants a formal notice of sale informing them that the property would be subject to foreclosure on November 7, 2017, if the "entire balance due on the [n]ote, and all costs and fees incurred in enforcing [PCB]'s rights under the [n]ote and governing [l]oan documents, [was] not paid in full prior to the sale date."

On October 31, 2017, Monika Page, appellants' real estate agent, emailed PCB's Paul Nauschutz requesting to delay the posted foreclosure of November 7, 2017, if the appellants bring a cashier's check for "past due payments [of] July (20[th]) through November (20[th])."

On November 2, 2017, appellants submitted a payment in the amount of $22,500.00 to PCB. The following day, PCB sent appellants a letter of acceptance of partial payment stating:

> Acceptance by [PCB] of the payment in an amount less than the full amount required to cure the defaults is an acceptance on account only, and the failure to pay the full amount required continues to be a default.
>
> This shall serve as notice that the foreclosure sale of the property serving as collateral for the [l]oan scheduled for November 7, 2017[,] has been pulled.
>
> Neither the failure nor any delay on the part of [PCB] to exercise any right, power or privilege under the [n]ote, or any of the documents executed and/or delivered in connection with the [n]ote . . . shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. [PCB] reserves all of its rights and remedies under the [n]ote and the other [l]oan [d]ocuments, at law, in equity, or otherwise.

On November 14, 2017, PCB sent appellants a formal notice of sale informing them that the property would be subject to foreclosure on December 5, 2017, unless

3

appellants paid the balance due on the promissory note as well as all costs and fees incurred by PCB in "enforcing [their] rights under the [n]ote" in full before the sale date.

Following appellants' failure to cure the default, the property was sold to PCB at the highest bid price of $376,148.00. On February 16, 2018, PCB sent appellants a demand for payment letter informing them that a deficiency resulted from the foreclosure because the proceeds were not sufficient to pay all amounts due and owing under the promissory note. On October 3, 2018, PCB sent appellants another letter demanding payment of the deficiency plus accrued interest.

On December 10, 2018, PCB brought suit to collect appellants' deficient balance owed under the promissory note. At the time of filing, PCB sought to collect a total amount of $308,539.00, plus attorney's fees pursuant to the terms of the promissory note and § 38.001(8) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8).

On January 11, 2019, appellants filed their original answer and counterclaim wherein appellants alleged affirmative defenses of accord and satisfaction and failure to mitigate; a statutory offset defense under Texas Property Code § 51.003; and a fraudulent misrepresentation by omission counterclaim. *See* TEX. PROP. CODE ANN. § 51.003.

On July 12, 2023, PCB filed its combined traditional and no-evidence motions for summary judgment. In its no-evidence motion, PCB asserted that appellants cannot produce competent evidence of fair market value regarding its claim for offset; that they had no competent or admissible evidence of all elements of its accord and satisfaction defense; they "cannot adduce a scintilla of admissible evidence on the . . . duty to mitigate, lack of diligence, or the amount of increase in damages;" and they "cannot

4

adduce a scintilla of competent or admissible evidence supporting . . . fraudulent misrepresentation by omission."[2] In its traditional motion, PCB asserted that it was entitled to summary judgment on its claim for deficiency and in support of its motion, attached affidavits from PCB's Senior Vice President and Special Assets Operational Manager Matthew Noack, and PCB's attorney Rupert Barron. Noack stated he is the custodian of records at PCB, and was personally familiar with the

> [B]ooks and records of [PCB] with respect to the Promissory Note . . . for [l]oan [n]o. ending "7124" payable to [FNB] as original Lender in the original principal amount of $828,000.00 [promissory note], and bearing signatures in the names of [appellants] . . . including the Deed of Trust . . . , the Security Agreement . . . , the Modification Agreement . . . , the related loan documents executed in relation to the [n]ote, and the balance owed to [PCB] on the [n]ote.

He also attested that PCB was the current owner of the promissory note and had acquired the property on December 5, 2017, for $376,148.00. Noack further attested that "[a]fter crediting all such amounts from the . . . sale . . . , as of July 7, 2023, the unpaid principal balance due and owing under the [n]ote is $243,300.86 [and] the unpaid accrued interest is $244,767.33." He also stated that the total deficiency amount due and owing was "$488,068.19 with a post-default interest rate of 18% per annum." In support of Noack's affidavit, he attached the promissory note; the deed of trust; the security agreement; the modification agreement; the August 29, 2017 notice of default; the October 12, 2017 formal notice of acceleration; the October 17, 2017 formal notice of sale; the October 31, 2017 electronic communications between Nauschutz and Page; the November 2, 2017 letter of acceptance of partial payment; the November 14, 2017 formal

---

[2] We note that PCB construed appellants' counterclaim as a claim of fraud by nondisclosure, and cited to the elements of fraud by nondisclosure.

notice of sale; electronic communications between Maria and Nauschutz on November 21, November 29, and December 1, 2017 by which they discussed, among other things, PCB's offer of a forbearance agreement to appellants; the substitute trustee's deed; and the notice of trustee's sale by substitute trustee. Barron's affidavit contained statements regarding the attorney's fees accrued by PCB and attached several billing invoices. The trial court scheduled a hearing on the combined motions for summary judgment for August 10, 2023.

On August 2, 2023, appellants filed their first amended original answer and counterclaim. They alleged new affirmative defenses including usury, estoppel, duress, waiver, and payment. Appellants further asserted additional counterclaims, including usury and failure to pay interest.

On August 3, 2023, appellants filed their response to PCB's combined motions for summary judgment. In their response, appellants objected to Noack's and Barron's affidavits. Appellants attached affidavits by Maria and Page to their response. According to Maria, appellants purchased the property for "over one million dollars" in 2007, and that they had financed the purchase, in part, with a promissory note with FNB, and that "[PCB] claim[ed] to be the owner of that note." She admitted that they "fell behind on the payments due to business slowdowns" in 2017, and the promissory note was accelerated by PCB. Maria further stated that they agreed to pay $22,500.00 "based on the express representation of [Nauschutz] on behalf of [PCB] that the November [2,] 2017 foreclosure sale would be canceled so that we could sell the property." She also states that it was "agreed that [appellants] would continue to make the monthly payments on the note while the property was in the process of being sold." Maria attested that they relied on this

6

"promise and representation," and they "did not know that [PCB] was planning on posting the property for a foreclosure sale the following month . . . or else [they] would not have paid the money."

Maria stated in her affidavit that they tried "to sell the property to a buyer who would operate it as a restaurant for $795,000.00." She also stated that they had owned the property for ten years and that she was

> [A]ware of the value of the property from [her] ownership, [her] contacts with the Jim Wells County Appraisal District concerning the value and the value of similar properties in Alice, Texas, prior attempts to sell the property (which fell through due to a prior partner's failure to agree to a sale), the condition of the property and [her] years in the restaurant business.

Maria attested she "believe[d] that the fair market value of the property on December 5, 2017[,] was at least $800,000.00."

Page explained in her affidavit that she was hired by appellants to sell the property and that she had discussions with Nauschutz in the latter part of 2017. Page stated that

> Nauschutz said that if the [appellants] paid $22,500.00 to [PCB], that amount would bring the [appellants]' account current and compensate [PCB] for various other fees. [PCB] would then postpone the foreclosure sale to allow [her and appellants] to continue to market the property to be sold as long as the [appellants] continued to make the monthly payments starting in December of 2017.

Page also stated that she provided the $22,500.00 cashier's check to PCB and that,

> [A]lthough the posted sale that was set for November of 2017 was canceled by [PCB], [PCB] posted the property for foreclosure for the following month of December of 2017. Neither [Nauschutz] nor [PCB] ever discussed or stated that the property would be posted again for foreclosure the following month when the $22,500.00 was paid. In fact, [PCB] represented that the [appellants] were to be given the opportunity to continue to make monthly payments while [she] tried to sell it.

7

On August 9, 2023, PCB filed its reply to appellants' response objecting to Maria's and Page's affidavits while also responding to appellants' objections as to Noack's and Barron's affidavits.

The next day, the trial court held a hearing on PCB's combined traditional and no-evidence motions for summary judgment and took the motions under advisement. The following day, PCB filed a supplemental reply to appellants' response to its combined motions for summary judgment.

On September 1, 2023, the trial court granted PCB's traditional and no-evidence motions for summary judgment concluding that "after considering the pleadings on file, the Motion, the competent summary judgment evidence, and the response[s] . . . the Motion should, 'in all respects', be GRANTED." PCB was awarded damages in the amount of $243,300.86 for the unpaid balance due and owing under the promissory note, $244,767.33 in accrued interest, $102,148.05 in attorney's fees, post-judgment interest, and court costs. The trial court stated that "this judgment finally disposes of all parties and all claims and is appealable, and all relief not specifically granted by this judgment is hereby denied."

On October 2, 2023, appellants filed a motion for new trial arguing that there are genuine issues of material fact and PCB failed to prove that it was entitled to judgment as a matter of law. On November 9, 2023, the trial court held a hearing on appellants' motion for new trial and denied it. This appeal followed.

## II.    OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Appellants raise several issues pertaining to the objections made against the parties' summary judgment evidence in their written pleadings. We address these

evidentiary issues first.

## A.    Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude summary-judgment evidence for an abuse of discretion. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017); *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 893–94 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We will not reverse a trial court's erroneous evidentiary ruling unless the error caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

"A party must present its summary judgment evidence in a form that would be admissible at trial." *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see* TEX. R. CIV. P. 166a(f). "Certain defects in summary judgment evidence are defects in substance that a party may raise on appeal even if the complaining party failed to object or failed to secure an adverse ruling in the trial court." *Fortitude Energy, LLC*, 564 S.W.3d at 178. For example, "[a] conclusory statement in an affidavit is a defect of substance." *Threlkeld v. Urech*, 329 S.W.3d 84, 89 (Tex. App.—Dallas 2010, pet. denied). "Complaints regarding defects in form, however, must be presented to the trial court, and the complaining party must obtain either an explicit or implicit ruling on the objection." *Fortitude Energy, LLC*, 564 S.W.3d at 178. Consequently, "[f]ailure to obtain that ruling waives the evidentiary objection." *Bates v. Pecos County*, 546 S.W.3d 277, 285 (Tex. App.—El Paso 2017, no pet.); *see also* TEX.

9

R. APP. P. 33.1(a)(2)(A) (trial court must either expressly or implicitly rule on an objection for an issue to be preserved for appellate review).

"A trial court's on-the-record, unequivocal oral ruling on an objection to summary judgment evidence qualifies as a ruling under Texas Rule of Appellate Procedure 33.1, regardless of whether it is reduced to writing." *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 838 (Tex. 2022). "However, the mere granting of a summary judgment motion does not suffice as an implicit ruling on objections to summary judgment evidence." *Fortitude Energy, LLC*, 564 S.W.3d at 178 (cleaned up). "For there to be an implicit ruling on objections to summary judgment evidence, there must be some indication that the trial court ruled on the objections in the record or in the summary judgment itself, other than the mere granting of the summary judgment." *Id.* (cleaned up).

## B. Nature of Objections

As we explain below, the trial court did not rule on either party's objections, and both parties failed to object to the trial court's refusal to rule on their objections. *See* TEX. R. APP. P. 33.1(a). Therefore, it is necessary to first distinguish between the parties' form and substance objections.

In their response to PCB's summary judgment motions, appellants asserted various objections to Noack's and Barron's affidavits. Specifically, appellants argued that Noack lacked personal knowledge to support his affidavit testimony regarding the amounts owed for principal and accrued interest, and that these statements were "hearsay and . . . not the best evidence of the amount allegedly owed." An appellant's hearsay and best evidence objections constitute objections as to form. *See Tri-Steel Structures, Inc. v. Baptist Found. of Tex.*, 166 S.W.3d 443, 448 (Tex. App.—Fort Worth

10

2005, pet. denied) ("[H]earsay is a defect in form."); *see also Colvin v. Tex. Dow Emps. Credit Union*, No. 01–11–00342–CV, 2012 WL 5544950, at *4 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem. op.) ("[A] best-evidence objection is a form objection." (collecting cases)). But appellants' lack of personal knowledge objection constitutes a defect in substance. *See Houle v. Cap. One Bank (USA), N.A.*, 570 S.W.3d 364, 372 (Tex. App.—El Paso 2018, pet. denied) ("[A] lack of personal knowledge, reflected in the affiant's testimony itself and not just as the lack of a formal recitation, is a defect of substance that may be raised for the first time on appeal.")

Appellants also averred that Noack's statement regarding expenses in the amount of $46,278.64 constituted hearsay, which is a defect in form. *See Tri-Steel Structures, Inc*, 166 S.W.3d at 448. In addition, appellants argue that this information was not "documented" by Noack, and he "failed to attach an account history or any document that showed how the amount sued for was determined." Appellants further argue that Noack did not "indicate[] how he calculated the interest and what figures were used" nor "attach any document setting forth how the interest was calculated or the payments made." Appellants contend Noack's affidavit lacked trustworthiness as a result. To the extent these objections can be construed as an objection that Noack's affidavit failed to attach documents referenced therein, we have previously concluded that such failure constitutes a defect in substance. *See Caso-Bercht v. Striker Indus*., 147 S.W.3d 460, 464 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (holding the appellees' supporting documents were "substantively defective because the records they referred to were not attached").

Appellants also objected to Barron's affidavit "for the reasons that he has not

11

segregated the attorney's fees for matters on non-fee producing issues."[3] We construe appellants' argument as an objection that Barron's affidavit was conclusory, a defect in substance. *See Threlkeld*, 329 S.W.3d at 89.

In its reply to appellants' response, PCB argued that Maria's affidavit testimony that appellants "were trying to sell the property to a buyer who would operate it as a restaurant for $795,000.00" was hearsay without exception and requested it be stricken. PCB also objected to Maria's belief that the fair market value of the property "was at least $800,000.00." PCB argued that this statement was based on hearsay without exception and violated the best evidence rule. PCB also objected and requested to strike Page's affidavit testimony that she had a potential buyer who was interested in purchasing the property for $795,000.00. According to PCB, this statement was speculative, unsupported, and constituted hearsay and "improper opinion testimony." PCB asserted that both affidavits failed to constitute competent summary judgment evidence and characterized them as "self-serving representations of alleged oral representations." PCB averred that appellants "offer[ed] no competent summary judgment evidence of [their] purported 'issues of fact,' relying instead on claims of ignorance and on improper opinion testimony, hearsay, and unsupported self-serving conclusory statements presented as fact." To the extent PCB objected to the affidavits on the basis that they were self-serving, constituted unsubstantiated opinion testimony, contained hearsay, and violated the best evidence rule, these objections constitute objections as to form. *See Tri-Steel Structures, Inc*, 166 S.W.3d at 448; *see also Colvin*, 2012 WL 5544950, at *4; *City of Dallas v.*

---

[3] Appellants raise two issues on appeal related to Barron's affidavit, which we address later in this opinion.

12

*Papierski*, No. 05-17-00157-CV, 2017 WL 4349174, at \*2 (Tex. App.—Dallas Oct. 2, 2017, no pet.) (mem. op.) ("Objections to hearsay, best evidence, self-serving statements, and unsubstantiated opinions are considered defects in form.").

**C.      Analysis**

**1.      Failure to Enter Written Order Ruling on Parties' Objections**

In their first issue, appellants argue that the trial court erred in failing to enter a written ruling on the parties' objections to their respective summary judgment evidence. Texas Rule of Appellate Procedure 33 governs the preservation of appellate complaints. TEX. R. APP. P. 33.1. To preserve error for appellate review under Rule 33.1(a), the record must show that the complaining party made a timely and specific request, objection, or motion, and the trial court expressly or implicitly (1) ruled on the request, objection, or motion or (2) refused to rule and the complaining party objected to that refusal. *Id.*; *see Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Here, the record demonstrates that neither party obtained a written ruling on their respective objections, nor did either party object to the trial court's refusal to enter a written ruling. Therefore, appellants failed to preserve their complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(2)(B). We overrule appellants' first issue.

**2.      Waiver of PCB's Evidentiary Objections**

By their second issue, appellants argue that PCB forfeited its objections to appellants' summary judgment evidence by failing to obtain a written ruling. In response, PCB argues that the trial court orally ruled on the objections at the motion for new trial hearing[4] where the following exchange occurred:

---

[4] In connection to the motion for new trial hearing, appellants argue that they did not forfeit their

13

| | |
|---|---|
| [Appellants' counsel]: | One thing I was concerned about, though, is I think, by your ruling, you impliedly granted [PCB]'s objections to our summary judgment evidence and overruled our objections to their summary judgment evidence, but I didn't see that incorporated into the judgment, and I wanted to make [sic] the record is clean. I think [PCB] had submitted an order back on August 9th of this year, a proposed order on that, but when I looked on[]line, I did not see that it had been signed, and I didn't have a signed copy, so I just wanted to see, when you make the ruling here on the Motion for New Trial, you could either incorporate what your rulings were on that, which I assume are probably what contained in that proposed order from August 9th or it might be—I don't know if it would be cleaner to just go ahead and sign that order they submitted. And, obviously, I don't want to agree to the order, but I think it accurately reflects what your ruling was on that. |
| THE COURT: | Okay. So that part was the granting of—what was that again, please? |
| [Appellants' counsel]: | It was entitled—and it was August 9th. It's an Order Ruling on Parties' Summary Judgment Objections. And I think [PCB] submitted the judgment at a later time. No, it was an earlier time, but it didn't incorporate that in there, so I don't know if [PCB's] intention was to have both signed, but as far as I can tell, only the judgment itself was signed. |
| THE COURT: | Okay. |
| [Appellants' counsel]: | So I just wanted to see if we could have that order signed so it does accurately reflect that you did grant [PCB's] objections and overrule [appellants'] objections on that. |
| THE COURT: | Okay. So that's going to be corrected, so that was my order. . . . |

own objections because they "'tried their darndest' to get a written ruling but were unable to do so."

14

. . . .

| | |
|---|---|
| THE COURT: | So what's going to happen if [appellants'] do[] decide to appeal this, the Court of Appeals is going to send it back to me because they're going to say that— |
| [Appellants' counsel]: | Yes, sir. |
| THE COURT: | —I still have power over it that I haven't completely made my ruling, I believe. |
| [Appellants' counsel]: | Well, it's going to be incomplete. You just don't want to have the record incomplete. Like I say, I don't think you would have granted the motion if you hadn't granted their objections because I think that clearly— |
| THE COURT: | I do think it goes . . . hand in hand, so I need it to follow my order, my decision that I made. |

. . . .

| | |
|---|---|
| THE COURT: | Okay. Was that all we had today? |
| [Appellants' counsel]: | That's it, Judge. Appreciate it. |
| THE COURT: | Okay. Yeah, hopefully it's cleared up by now. |

First, it is undisputed that the trial court's order granting summary judgment did not expressly or implicitly rule on either party's objections. And we cannot say from the above colloquy that the trial court made an "on-the-record, unequivocal oral ruling" on either party's evidentiary objections. *FieldTurf USA, Inc.*, 642 S.W.3d at 838. At most, the trial court expressed a future intent to sign PCB's proposed order because it had not "completely made [its] ruling" and doing so would be consistent with granting PCB summary judgment. However, the trial court never followed through, and we are left to speculate whether the trial court changed its mind. At that point, with no signed order or

15

express oral ruling in hand, it was incumbent upon the parties to object to the trial court's refusal to rule on their respective objections. *See* TEX. R. APP. P. 33.1(a)(2)(B).

PCB also suggests that the trial court implicitly ruled on the objections, citing to the Texas Supreme Court's opinion in *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, (Tex. 2018) (per curiam). In *Seim*, the Texas Supreme Court held that the mere granting of summary judgment was not an implicit ruling on objections to summary judgment evidence and stated that a ruling may be implied if the implication is "clear" *Id.* at 164–66; *see also Fortitude Energy, LLC*, 564 S.W.3d at 178 (providing same). The Texas Supreme Court also pointed out that substantive defects can be complained of for the first time on appeal and are not subject to the general rules of error preservation. *Id.* at 166; *see also Fortitude Energy, LLC*, 564 S.W.3d at 178 (providing same). In connection to *Seim*, PCB argues that none of its objections were form objections. However, as we addressed supra, PCB raised form objections to appellants' summary judgment evidence. PCB provides no additional analysis explaining how the trial court implicitly ruled on its form objections other than pointing to the trial court's order granting its combined motion for summary judgment.

In *Fortitude Energy, LLC*, the First Court of Appeals held that the trial court implicitly overruled the parties' objections to summary judgment evidence because the order granting summary judgment indicated that the trial court considered "all summary judgment evidence." *Id.* at 179. Here, nothing in the trial court's order granting PCB's traditional and no-evidence motions for summary judgment indicates the trial court considered all the summary judgment evidence. *See id.* Instead, the order indicates that the trial court considered the "competent summary judgment evidence." The order does

16

not detail what constituted said evidence. In these circumstances, we cannot conclude that a ruling on the parties' form objections can be implied by said language in the order. *See id.*; *see also Seim*, 551 S.W.3d at164–66.

Because we have determined that the trial court made no explicit or implied ruling on the parties' form objections, and neither objected to the trial court's refusal to rule on them, we concluded that both parties' form objections are forfeited. *See* TEX. R. APP. P. 33.1(a)(2)(A); *Bates*, 546 S.W.3d at 285. Therefore, we decline to address appellants' third issue insofar as it raises sub-issues arguing that the trial court erroneously overruled appellants' form objections to Noack's affidavit.[5] In addition, we decline to address appellants' fourth and fifth issues arguing that the trial court erroneously granted PCB's form objections to appellants' affidavits.

### 3. Substantive Defects

Appellants raise several sub-issues in their third issue arguing that Noack's affidavit contains defects of substance, which they may raise on appeal despite their failure to secure an adverse ruling in the trial court. *See Fortitude Energy, LLC*, 564 S.W.3d at 178.

In one sub-issue, appellants argue that Noack's affidavit testimony lacked

---

[5] Specifically, appellants raise a sub-issue in their third issue that Noack's affidavit testimony was "hearsay [because] he did not have personal knowledge of all payments, debits and credits on the account." Hearsay and lack of personal knowledge are two legally distinct objections. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801. In contrast, supporting and opposing affidavits in a summary judgment motion "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). We decline to address this sub-issue to the extent it challenges the trial court's overruling of appellants' hearsay objection. Appellants also raise a sub-issue that Noack's statements regarding the amount owed by appellants to PCB were hearsay, which we also specifically decline to address since we have determined that the trial court made no ruling on this form objection. For the same reasons, we also decline to address appellants' issue that Noack's statements regarding the amount of principal and interest appellants owed "were not the best evidence."

"personal knowledge of all payments, debits and credits on the account." Supporting and opposing affidavits in a summary judgment motion "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). "We look to the entire affidavit to determine whether the facts asserted therein are based on personal knowledge." *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 428 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). "An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts." *Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 791 (Tex. App.—Dallas 2013, pet. denied). "The personal knowledge requirement may be satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit." *Rogers*, 533 S.W.3d at 429.

Noack stated in his affidavit that he was a "Senior Vice President and Special Assets Operations Manager" and a custodian of records at PCB. He further stated that he was "personally familiar with the books and records of [PCB]," including the deed of trust, the security agreement, and the modification agreement, as well as the balance owed to PCB on the promissory note. We conclude that Noack's affidavit made a direct and unqualified claim of personal knowledge in that he occupied multiple roles in PCB that directly attended the promissory note, which made it more reasonable to assume personal knowledge of the loan documents and records that were the subject of his affidavit. *See id.*; *see also Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 131 (Tex. App.—Dallas 2014, no pet.) ("When an affiant's summary judgment affidavit

18

contains testimony that identifies him as a record custodian and establishes his relationship with the facts of the case in a manner sufficient to demonstrate the facts at issue, the personal knowledge requirement for summary judgment affidavits may be satisfied."). We overrule this sub-issue.

In another sub-issue, appellants argue that Noack's affidavit violated Rule 166a(f) because Noack "failed to attach the payment history from which he obtained the amount [appellants] allegedly owed." When an affidavit in a summary judgment proceeding refers to other papers, sworn or certified copies of those papers must be attached to the affidavit. *See* TEX. R. CIV. P. 166a(f); *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied). An affidavit is substantively defective when the absence of the referenced papers from the summary judgment evidence leaves the affidavit conclusory. *Brown*, 145 S.W.3d at 752. Because Noack's affidavit makes no reference to such papers regarding "payment history," the requirement that such papers be attached to the affidavit was not triggered. *See id.*; *Brown*, 145 S.W.3d at 752. We overrule this sub-issue.

Lastly, appellants argue Noack's affidavit "lack[s] trustworthiness" because he "failed to indicate how he or [PCB] calculated the interest and what figures were used" and "failed to attach any document setting forth how the interest was calculated or the payments made." Appellants do not provide citation to legal authority in support of their argument, and we are unaware of any authority requiring a detailed payment history and supporting documentation with regard to affidavit testimony concerning the outstanding interest or balance due on a note. *See* TEX. R. APP. P. 38.1; *NexPoint Advisors, L.P.*, 674 S.W.3d at 446; *see also Rogers v. Asset Lending, L.L.C.*, No. 14-16-00980-CV, 2018 WL 3118645, *6 (Tex. App.—Houston [14th Dist.] June 26, 2018, no pet.) (mem. op.)

("[Appellants] fault [appellee] for not providing records showing the payment history on the [n]ote (or lack thereof) during the period from March 6, 2013, to April 11, 2013. However, [appellants] have not cited, nor have we located, any authority requiring that level of payment-history detail with regard to presenting competent evidence of the balance due on a note."). Accordingly, we overrule this sub-issue and the entirety of appellants' third issue.

### III. TRADITIONAL AND NO-EVIDENCE SUMMARY JUDGMENT

In their sixth and seventh issues, appellants argue that the trial court erred in granting PCB's traditional and no-evidence motions for summary judgment, asserting multiple sub-issues. We address each issue in turn.

### A. Standard of Review and Applicable Law

We review a trial court's summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Our de novo standard of review extends to both traditional and no-evidence summary judgments. *Shaun T. Mian Corp. v. Hewlett–Packard Co.*, 237 S.W.3d 851, 855 (Tex. App.—Dallas 2007, no pet.). When, as here, the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *Merriman*, 407 S.W.3d at 248. Evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.*; *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005).

20

A plaintiff moving for traditional summary judgment must conclusively establish all essential elements of its claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)); *see* TEX. R. CIV. P. 166a(c). Once the moving party establishes its right to a traditional summary judgment, the burden shifts to the nonmoving party to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam); *see Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 898 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

A no-evidence summary judgment is properly granted if, after adequate time for discovery, the movant asserts there is no evidence supporting one or more specified elements of a claim or defense on which the nonmovant bears the burden of proof at trial, and the nonmovant then produces no summary judgment evidence raising a genuine issue of material fact on those elements. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam); *see also Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); TEX. R. CIV. P. 166a(i). "When a no-evidence motion for summary judgment is combined with a traditional motion for summary judgment, the evidence attached to the traditional motion may be considered in determining the existence of a fact issue." *Long v. Riedel*, 710 S.W.3d 381, 388 (Tex. App.—Fort Worth 2025, no pet.). "The nonmovant may rely on evidence attached to a movant's combined traditional and no-evidence summary judgment motion, but the nonmovant bears the burden to specifically point out to the trial court which evidence raises a fact issue on the challenged elements." *Id.*

21

We sustain no evidence challenges when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak it does no more than create a surmise or suspicion of a fact. *Id.* When evidence is so slight that making an inference therefrom is merely a guess, then the evidence has no legal effect. *Ridgway*, 135 S.W.3d at 601. More than a scintilla of evidence exists when it is sufficient to enable reasonable and fair-minded people to differ in their conclusions. *Chapman*, 118 S.W.3d at 751. And a matter may be conclusively established by the evidence "only if reasonable people could not differ in their conclusions, which depends on the facts of each case." *Wilson*, 168 S.W.3d at 816.

## B.  Analysis[6]

### 1.  PCB's Traditional Summary Judgment

In their sixth issue, appellants argue that the trial court erred in granting PCB's traditional summary judgment on its deficiency claim because there were genuine issues of material fact.

---

[6] Usually, when a party moves for both traditional and no-evidence summary judgments, we first consider the no-evidence motion. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017). The reasoning behind this is that "[if] the non-movant fails to meet its burden under the no-evidence motion, there is no need to address the challenge to the traditional motion as it necessarily fails." *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). However, in this case, PCB's traditional motion pertained to its claim for deficiency, and its no-evidence motion pertained to appellants' affirmative defenses to PCB's claim of deficiency and appellants counterclaims. In general, a moving plaintiff is not under any obligation to negate a defendant's pleaded affirmative defenses. *Woodside v. Woodside*, 154 S.W.3d 688, 691–92 (Tex. App.—El Paso 2004, no pet.); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Rather,

"To recover on a promissory note, the plaintiff must prove (1) the note in question; (2) the defendant signed the note; (3) the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note." *Senior Care Living VI, LLC v. Preston Hollow Cap., LLC*, 695 S.W.3d 778, 811 (Tex. App.—Houston [1st Dist.] 2024 pet. denied) (citing *Dorsett v. Hisp. Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). "Where the holder of a promissory note has the option to accelerate maturity of the note upon the maker's default, equity demands notice be given of the intent to exercise the option." *Id.* at 811–12 (quoting *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982)). "Because a promissory note is 'initially contemplated to extend over a period of months or years,' the accelerated maturity of a note 'is an extremely harsh remedy.'" *Id.* at 812 (quoting *Savoy v. Nat'l Collegiate Student Loan*, 557 S.W.3d 825, 839 (Tex. App.—Houston [1st Dist.] 2018, no pet.)).

"A creditor must give the debtor an opportunity to pay the past due installments before accelerating the entire indebtedness; thus, the creditor must make a demand for payment of past due amounts before exercising the option to accelerate." *Id.* (citing *Savoy*, 557 S.W.3d at 839). "For acceleration to be effective, the holder of the note must notify the maker of both its intent to accelerate and of the acceleration." *Id.* "If, after notice of intent to accelerate, the debtor fails to remedy the breach, then the creditor is

---

an affirmative defense only prevents the granting of summary judgment if each element of the affirmative defense is supported by summary judgment evidence. *Woodside*, 154 S.W.3d at 691–92. "[A]n affirmative defense seeks to establish an independent reason why the plaintiff should not recover." *Texas Ass'n of Sch. Boards Risk Mgmt. Fund v. Colorado Indep. Sch. Dist.*, 660 S.W.3d 767, 772 (Tex. App.—Eastland 2023, no pet.). "That is, an affirmative defense is one of avoidance, rather than a defense in denial of a claim." *Id.* Accordingly, in this case, appellants failure to meet its burden under the no-evidence motion for their affirmative defenses and counterclaims would not automatically mean that appellants' challenge to PCB's traditional motion would necessarily fail. *See Parker*, 514 S.W.3d at 219.

23

authorized to accelerate maturity." *Id.* (citing *Ogden*, 640 S.W.2d at 233); *see also Karam v. Brown*, 407 S.W.3d 464, 469–70 (Tex. App.—El Paso 2013, no pet.) ("If the default has not been cured by the deadline established in the notice, the lender must then give notice of acceleration.").

Here, PCB established all four elements of its deficiency claim through Noack's affidavit and the attached documents. In addition, this same evidence demonstrated that PCB provided the appellants with an opportunity to pay their past due installments. *See Senior Care Living VI, LLC*, 695 S.W.3d at 811. Specifically, PCB sent notice of default to appellants on August 29, 2017, informing them to cure their defaults within ten days or the note would be accelerated. After appellants failed to cure the default, PCB sent appellants a formal notice of acceleration on October 12, 2017. *See id.* Thus, Noack's affidavit established that PCB was authorized to accelerate the note. *See id.*; *Ogden*, 640 S.W.2d at 233; *Karam*, 407 S.W.3d at 469–70.

Appellants further argue that a fact issue remains as to what amount appellants owed because Noack failed to attach the account history to his affidavit. Specifically, appellants argue that PCB "failed to offer any evidence that the interest was properly calculated as per the terms of the [promissory n]ote" and that "there is no indication in the record if the $22,500.00 paid by [a]ppellants to reinstate the note was applied or how much was applied to principal, how much to [the] interest and how much to the 'fees' that the bank included in the $22,500.00 demand." Appellants also contend there is no documentation in Noack's affidavit "regard[ing] . . . the $46,278.64 in expenses." However, "[a] lender is not required to file detailed proof of the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance

24

due on a note is sufficient to sustain an award of summary judgment." *HHH Farms, L.L.C. v. Fannin Bank*, 648 S.W.3d 387, 405 (Tex. App.—Texarkana 2022, pet. denied) (cleaned up). A mere assertion of "lack of information" related to a bank's affidavit regarding amounts owed or how to calculate a balance due on a note does not raise a fact issue to defeat summary judgment. *See Martin v. First Republic Bank Fort Worth*, 799 S.W.2d 482, 485 (guarantors' mere assertion of lack of information regarding how certain time period of interest was calculated did not defeat summary judgment); *Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930, 938 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.) ("[T]he showing of a lack of information shows no more than that there is an absence of summary judgment proof to raise a fact issue to defeat the summary judgment motion."). Maria's affidavit "dispute[d]" Noack's statement regarding what appellants owed in principal and interest because she was unaware if they received credit for previous payments made towards the promissory note, including the $22,500.00. Appellants did not offer an alternative calculation, and Maria's statement regarding her lack of knowledge does not controvert PCB's evidence of the deficiency balance. *See Martin*, 799 S.W.2d at 485; *Morgan*, 699 S.W.2d at 938.

Appellants also argue that PCB reinstated the promissory note when it accepted appellants' payment of $22,500.00 on November 2, 2017. There is nothing in Noack's affidavit and its attached documents that raise a reasonable inference that PCB's acceptance of the $22,500.00 was for "reinstatement" of the promissory note. *See Senior Care Living VI, LLC*, 695 S.W.3d at 811 (providing that a plaintiff seeking to recover on a promissory note must prove that a certain balance is due and owing on a note). PCB's summary judgment evidence demonstrates that after PCB accelerated the promissory

25

note, PCB sent its November 3, 2017 letter informing the appellants of PCB's acceptance of their "partial payment," and that said acceptance was "on account only" because it was "in an amount less than the full amount required to cure the defaults." In addition, Noack's affidavit contained attached electronic communications from November 21, 2017, and November 29, 2017, wherein PCB offered appellants a "forbearance agreement." PCB offered to withhold posting the foreclosure in exchange for a fixed sum of money and monthly payments. However, PCB also advised appellants that the promissory note was accelerated and due in full, and that PCB was not "willing to make a full reinstatement of the loan."

Appellants point to several statements by Maria and Page in their respective affidavits. Specifically, Maria states appellants paid the $22,500.00 check to PCB based on its representation that "the November [2,] 2017 foreclosure sale would be canceled so that [the appellants] could sell the property." Maria further stated that the appellants and PCB "agreed that [the appellants] would continue to make the monthly payments on the note while the property was in the process of being sold." Similarly, Page stated that PCB along with Nauschutz "said that if the [appellants] paid $22,500.00 to [PCB], that amount would bring the [appellants'] account current and compensate [PCB] for various other fees." Page also stated that "[PCB] would then postpone the foreclosure sale to allow [she and appellants] to continue to market the property to be sold as long as the [appellants] continued to make the monthly payments starting in December of 2017." However, even viewing these statements in the light most favorable to appellants, they fail to raise a genuine issue of material fact regarding whether there was a certain balance due and owing on the promissory note at the time Noack executed his affidavit. *See Senior Care*

26

*Living VI, LLC*, 695 S.W.3d at 811. Moreover, nothing in Maria's nor Page's affidavits raise a reasonable inference that PCB canceled or withdrew acceleration of the full balance due and owing. Accordingly, we conclude that the trial court did not err when it granted PCB's traditional summary judgment with respect to PCB's deficiency claim. Appellants' sixth issue is overruled.

### 2. No-Evidence Summary Judgment

In their seventh issue, appellants argue that the trial court erred in granting PCB's no-evidence summary judgment because they raised more than a scintilla of evidence on each of the elements of their various affirmative defenses and counterclaims.

### a. Accord and Satisfaction

In their first sub-issue, appellants assert that they presented more than a scintilla of evidence with respect to their accord and satisfaction affirmative defense. The accord and satisfaction defense applies between parties to an existing obligation, who subsequently agree to the discharge of that obligation by means of a subsequent payment tendered and accepted. *LuxeYard, Inc. v. Klinek*, 643 S.W.3d 260, 266 (Tex. App—Houston [14th Dist.] 2022, no pet.) (citing *Katy Int'l v. Jiang*, 451 S.W.3d 74, 86 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Maria stated in her affidavit that appellants and PCB "agreed that [appellants] would continue to make the monthly payments on the note while the property was in the process of being sold." Moreover, Page stated in her affidavit that "Nauschutz said that if [appellants] paid $22,500.00 to [PCB]. . . .[, PCB] would then postpone the foreclosure sale to allow [them] to continue to market the property to be sold as long as the [appellants] continued to make the monthly payments starting in December of 2017." As discussed above, Noack's affidavit

27

demonstrated that PCB offered appellants to enter into a forbearance agreement, but did not offer to reinstate nor discharge the promissory note. Furthermore, we do not conclude that it is a reasonable inference from Maria's and Page's statements that appellants and PCB entered into an agreement to *discharge* appellants from their obligation to pay the accelerated balance of the promissory note. *See id.* Thus, appellants failed to produce more than a scintilla of evidence demonstrating the elements of their accord and satisfaction defense. *See* TEX. R. CIV. P. 166a(i); *Moreno*, 201 S.W.3d at 688. Accordingly, we conclude the trial court did not err in granting PCB's no-evidence motion for summary judgment with respect to appellants' accord and satisfaction affirmative defense. We overrule appellants' first sub-issue.

### b. Offset under Texas Property Code § 51.003

In their second sub-issue, appellants assert that they presented more than a scintilla of evidence with respect to their claim for offset under the Texas Property Code. *See* TEX. PROP. CODE ANN. § 51.003. "[A] deficiency judgment is . . . the amount by which . . . debt and foreclosure costs exceed the foreclosure sale price." *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 5 (Tex. 2014).

> But, that amount may be reduced if the borrower . . . files a motion under [TEX. PROP. CODE ANN. §] 51.003. Section 51.003 provides that if the fact-finder determines that the fair market value is greater than the foreclosure sale price, the party obligated on the debt may ask the court to offset the deficiency owed by the difference between the fair market value and the foreclosure sale price:
>
> > (a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

28

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence . . . .

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation . . . exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

*Id.* (quoting TEX. PROP. CODE ANN. § 51.003). In relation to § 51.003, appellants argue that they raised "some evidence that the fair market value of the property was . . . much greater than the foreclosure sale price," while PCB merely argues that appellants presented no competent evidence of the same. *See id.* § 51.003(b). Specifically, appellants direct us to Maria's affidavit testimony regarding her belief that the fair market value of the property "was at least $800,000.00" at the time of the foreclosure sale.

The term "fair market value" as used in § 51.003 is not statutorily defined. *See id.* § 51.003; *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015) ("The Legislature used the phrase 'fair market value' in § 5.003 without defining it . . . ."). The historic definition of fair market value is "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Martin*, 459 S.W.3d at 556 (quoting *City of Harlingen v. Est. of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001)). However, the Texas Supreme Court has explained that the term "'fair market value' in § 51.003 does not

29

equate precisely to the common, or historical definition," and that instead the "historical definition as modified by § 51.003(b) authorizes the trial court to consider in its discretion, to the extent such evidence is not subsumed by the historical definition." *Id.* at 556–57.

As demonstrated above, § 51.003 defines competent evidence as, among other things, "expert testimony." TEX. PROP. CODE ANN. § 51.003(b). The Property Owner Rule provides that a property owner is qualified to testify to the fair market value of his property even if the owner would not qualify to testify on the value of like property belonging to another person. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 159 (Tex. 2012); *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984). The owner is limited to testifying to the property's fair market value and not its intrinsic or other speculative value. *See Craig*, 675 S.W.2d at 504. Property owner testimony "is the functional equivalent of expert testimony" and therefore "must be judged by the same standards." *Justiss*, 397 S.W.3d at 159. Like any expert, the property owner must explain "the factual basis on which his opinion rests." *Id.*; *see Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (observing that "it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law" (quotation marks omitted)). The Texas Supreme Court cautioned in *Justiss* that a property owner testifying to the value of his property may not "simply echo the phrase 'market value'" followed by a number but "must provide the factual basis on which his opinion rests." *Justiss*, 397 S.W.3d at 159. An owner's valuation may be substantiated with evidence such as "price paid, nearby sales, tax valuations, appraisals, online resources, and . . . other relevant factors." *Id.*

Here, Maria stated in her affidavit that appellants purchased the property for "over one million dollars." However, "[e]vidence of the past purchase price alone is legally insufficient to support a finding as to the property's market value at a later date." *DZM, Inc. v. Garren*, 467 S.W.3d 700, 704 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Espronceda v. Espronceda*, No. 13-15-00081-CV, 2016 WL 3225860, at *5 (Tex. App.—Corpus Christi–Edinburg June 9, 2016, no pet.) (mem. op.). Excluding her statement regarding the past purchase price, we conclude that none of the statements in Maria's affidavit provide an explanation as to how she arrived at the specific valuation of $800,000.00. Maria stated that she was aware of the property value from "contacts with the Jim Wells County Appraisal District concerning the value and the value of similar properties in Alice, Texas," but did not detail what those values were and did not attach any documentary evidence to her affidavit that could substantiate those values. *See id.* Maria also stated she was aware of the property value from "prior attempts to sell the property," but "[a]n unaccepted offer of purchase is not competent evidence of fair market value." *Vill. Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 134 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In addition, Maria stated she was aware of the property value from the "condition of the property" and her "years in the restaurant business." However, Maria does not explain how this knowledge led her to conclude that the property was worth $800,000.00. Similarly, ownership by itself does not provide a factual basis of a specific valuation. *See Justiss*, 397 S.W.3d at 159; *DZM*, 467 S.W.3d at 703 ("[A]n owner's property valuation may not be based solely on the owner's *ipse dixit*."). Because Maria's affidavit solely constitutes evidence of the property's past purchase price, we

31

conclude that Maria's affidavit testimony is insufficient evidence of fair market value. *See DZM, Inc.*, 467 S.W.3d at 704.

Appellants also point to Page's affidavit testimony that a potential buyer was interested in purchasing the property for $795,000.00 prior to the foreclosure sale. However, as stated above, an unaccepted offer of purchase is not competent evidence of fair market value. *See Vill. Place, Ltd.*, 404 S.W.3d at 134. Appellants point to no other evidence that the fair market value of the property was greater than the sale price of the property at the foreclosure sale, and we have found none. *See* TEX. PROP. CODE ANN. § 51.003. Thus, we conclude that appellants have failed to produce more than a scintilla of evidence demonstrating they were entitled to an offset pursuant to § 51.003. *See id*.; TEX. R. CIV. P. 166a(i); *Moreno*, 201 S.W.3d at 688. Accordingly, the trial court did not err in granting PCB's no evidence summary judgment with respect to appellants' claim for offset. We overrule appellants' second sub-issue.

### c.  Failure to Mitigate

In their third sub-issue, appellants assert that they presented more than a scintilla of evidence with respect to their failure to mitigate defense. The mitigation of damages doctrine "requires an injured party to use reasonable efforts to avoid or prevent losses." *E.L. & Assocs., Inc. v. Pabon*, 525 S.W.3d 764, 768 (Tex. App.—Houston [14th Dist.] 2017, no pet.) The doctrine requires "the injured party to exercise reasonable care to minimize its damages if damages can be avoided with only slight expense and reasonable effort." *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 708 (Tex. App.—Fort Worth 2006, pet. denied). "The party asserting failure to mitigate has the burden of proving

32

facts showing lack of such mitigation and must also show the amount by which the damages were increased by failure to mitigate." *Id.*

Regarding their failure to mitigate defense, appellants argue that PCB "failed to allow [Page] to continue trying to sell the property for $795,000.00," which "resulted in damages to [a]ppellants due to the massive increase in the alleged deficiency and their loss of the surplus that would have resulted." Also, appellants again point to Maria's and Page's affidavit testimony demonstrating that the fair market of the property "was in the $800,000[.00] range." However, as previously discussed, none of the statements by Maria or Page in their respective affidavits constituted competent evidence of fair market value of the property. Consequently, appellants have produced no competent evidence showing the amount by which damages were increased by PCB's alleged failure to mitigate. *See id.*; *see also Pabon*, 525 S.W.3d at 768; *Williamson v. Tucker*, 615 S.W.2d 881, 891 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) (holding that "[t]he act of foreclosure is, to a certain extent, a mitigation of damages" in a case where the appellee foreclosed on the appellant's interest in property after appellant defaulted on a note). We overrule appellants' third sub-issue.

### d.    Counterclaims of Fraud and Fraudulent Non-disclosure

In their fourth sub-issue, appellants argue in their brief that they presented more than a scintilla of evidence regarding their "cause of action for fraud" and cite the elements of fraud. Appellants generally reference Maria's and Page's affidavits to argue that PCB "failed to disclose . . . and concealed the fact that it intended to post the property for another foreclosure sale merely one month later," which "led [a]ppellants and . . . Page to believe that payment of" $22,500.00 "brought the account current and would allow the

33

property to be marketed." According to appellants, PCB had a "duty to disclose that fact," appellants were induced to make the $22,500.00 payment, and appellants "relied on the nondisclosure and were injured by the loss of that money and the loss of the money that would have resulted from a sale of the property at a much higher price if . . . Page could have continued to market it." In addition, appellants argue that they would have only made the $22,500.00 payment "in order to be able to try to market the property" and "restore [PCB] to the monies that [PCB] claimed were past-due [plus] the fees and expenses that it had incurred." Appellants further argue that they would not have made the payment but for "those representations and/or silence."

To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018). In contrast, to prevail on a claim of fraud by non-disclosure, a sub-category of fraud, the plaintiff must show: (1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (3) the defendant was deliberately silent when the defendant had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge. *White v. Zhou*

34

*Pei*, 452 S.W.3d 527, 537 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex. App.—Corpus Christi–Edinburg, 2014 no pet.) ("Fraud by omission or non-disclosure is another subcategory of fraud because an omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose.").

In their pleadings, appellants asserted a counterclaim titled "fraudulent misrepresentation by omission." Regarding that counterclaim, appellants pleaded that PCB "knowingly and recklessly made the representation to the agent for the [appellants] that the payment of $22,000.00, would allow the [appellants] time to sell or lease the property and to continue to satisfy the note until such time as one of those events occurred." In addition, appellants pleaded that they relied on said "misrepresentation" and were harmed "in an amount in excess of $22,000.00 through this fraudulent inducement." The pleaded counterclaim did not assert that PCB failed to disclose a fact, that PCB had a duty to disclose, or that appellants were injured by a purported non-disclosure. *See id.* Accordingly, we construe appellants' pleaded counterclaim as a claim of fraud despite its title. *See JPMorgan Chase Bank, N.A.*, 546 S.W.3d at 653.

Though PCB raised a no-evidence challenge to appellants counterclaim of fraudulent misrepresentation by omission, it construed said counterclaim as a claim of fraud by non-disclosure, cited the elements of fraud by non-disclosure, and argued appellants failed to raise evidence pertaining to fraud by non-disclosure. Here, appellants' arguments and references to summary judgment evidence pertain to a claim of fraud by non-disclosure, which appellants did not plead. *See White*, 452 S.W.3d at 537. We also note that appellants asserted substantially the same arguments and evidentiary

35

references pertaining to a claim of fraudulent non-disclosure in their response to PCB's no-evidence summary judgment, despite its continued references to the elements of fraud.[7] The judgment states the combined motions for summary judgment were granted "in all respects" and that it "finally dispose[d] of all parties and all claims and is appealable, and all relief not specifically granted by this judgment is hereby denied." Therefore, we conclude that the judgment disposed of appellants' pleaded counterclaim of fraud.

Next, we address whether the fraud by non-disclosure claim is properly before us. A defendant is "not required to guess what unpleaded claims might apply and negate them." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). However, when a nonmovant asserts a claim for the first time in its summary judgment response, the movant has two options: (1) object that the claim was not pleaded; or (2) respond on the merits and try the issue by consent. *Id.; see Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) ("The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal."). When the latter course is chosen, the claim is placed squarely before the trial and appellate courts. *Via Net*, 211 S.W.3d at 313. The record demonstrates that PCB did not object that a claim of fraud by non-disclosure was not pleaded. *See id.* Instead, PCB construed appellants counterclaim as a claim of fraud by non-disclosure in its no-evidence motion for summary judgment and responded to the unpleaded claim in its reply to appellants' response. Therefore, we

---

[7] Appellants' response to PCB's no-evidence summary judgment expressly argued that "more than a scintilla of evidence has been offered concerning the cause of action for fraud through the affidavits of . . . Maria and . . . Page."

conclude that PCB has chosen to try the unpleaded fraud by non-disclosure claim by consent and it is "squarely" before us. *Id.*

We now address if the trial court erred in granting PCB's no-evidence challenges to these counterclaims. "A trial court does not abuse its discretion in failing to consider summary judgment evidence the nonmovant does not specifically bring to the trial court's attention." *Walker v. Eubanks*, 667 S.W.3d 402, 409 (Tex. App.—Houston [1st Dist.] 2022, no pet.). In their response, appellants did not cite, quote, or otherwise direct the trial court to summary judgment evidence that would create a fact issue pertaining to the elements of fraud, including a positive misrepresentation of fact. *See JPMorgan Chase Bank, N.A.*, 546 S.W.3d at 653. Under these circumstances, we conclude the trial court did not abuse its discretion in granting PCB's no-evidence motion for summary judgment with respect to appellants' counterclaim of fraud. *See Walker*, 667 S.W.3d at 409; *see also White v. Calvache*, No. 05-17-00127-CV, 2018 WL 525684, at *4 (Tex. App.—Dallas Jan. 24, 2018, no pet.) (mem. op.) (concluding that in reviewing trial court's grant of no-evidence summary judgment, appellate court would consider only evidence for which appellant had provided specific reference and location in record); *Leija v. Laredo Cmty. Coll.*, No. 04-10-00410-CV, 2011 WL 1499440, at *5 (Tex. App.—San Antonio Apr. 20, 2011, no pet.) (mem. op.) ("When a summary judgment respondent fails to direct the reviewing court to specific summary judgment evidence, a fact issue cannot be raised sufficient to defeat summary judgment.").

Regarding the fraud by non-disclosure claim, Page's affidavit states that PCB failed to disclose that the December foreclosure sale would take place when the $22,500.00 was paid. *See Pei*, 452 S.W.3d at 537; *Chapman*, 118 S.W.3d at 751.

37

Furthermore, Maria stated in her affidavit that appellants did not know the second foreclosure sale would take place "or else [appellants] would not have paid the money." *See Pei*, 452 S.W.3d at 537; *Chapman*, 118 S.W.3d at 751. However, neither Maria's affidavit nor Page's affidavit contain statements that demonstrate or from which we can reasonably infer appellants lacked opportunity to discover that the second foreclosure sale would take place, which appellants were required to do. *See Pei*, 452 S.W.3d at 537. Thus, appellants have failed to produce more than a scintilla of evidence demonstrating each and every element of their fraud by non-disclosure claim. *See id*.; TEX. R. CIV. P. 166a(i); *Moreno*, 201 S.W.3d at 688. Accordingly, we conclude the trial court did not err in granting PCB's no-evidence summary judgment with respect to appellants' fraud and fraud by non-disclosure claims. We overrule appellants' fourth sub-issue and the entirety of their seventh issue.

## IV. UNADDRESSED COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

In their eighth and ninth issues, appellants respectively argue that the trial court erred in granting summary judgment in favor of PCB regarding the additional affirmative defenses and counterclaims appellants raised after PCB filed its combined motion for summary judgment. Appellants contend that PCB's combined motion for summary judgment did not move for summary judgment on these additional affirmative defenses and counterclaims, and PCB did not amend its motion to do so.

Summary judgment may only be granted upon grounds expressly asserted in the summary judgment motion. *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam); *see* TEX. R. CIV. P. 166a(c); *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam). Generally, it is reversible error for a trial court to grant summary

38

judgment on a claim not addressed in the motion. *G&H Towing*, 347 S.W.3d at 297; *Callahan v. Vitesse Aviation Servs., LLC*, 397 S.W.3d 342, 350 (Tex. App.—Dallas 2013, no pet.) ("In such a case, the portion of the summary judgment purporting to be final must generally be reversed because the judgment grants more relief than requested in the motion."); *Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied) ("It is well-settled that a summary judgment disposing of claims not addressed in the motion for summary judgment is improper."); *see also Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("[F]or example, if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final.").

Additionally, a summary judgment movant is not entitled to use his reply to amend his motion or raise new and independent grounds for summary judgment. *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 677 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *PAS, Inc. v. Engel*, 350 S.W.3d 602, 609 (Tex. App.—Houston [14th Dist.] 2011, no pet.). When a plaintiff amends his petition to add claims against a summary judgment movant, "the movant may not address the new claims by reply but must instead file an amended or supplemental motion." *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 852 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("[C]laims pleaded after a summary judgment is filed must be addressed by an amended or supplemental motion, not by reply brief.").

Here, the trial court's judgment granted PCB's traditional and no-evidence motions for summary judgment "in all respects," and it "finally dispose[d] of all parties and all claims and is appealable, and all relief not specifically granted by this judgment is hereby denied." The record reflects that after PCB filed its combined motions for summary judgment, appellants amended their original answer and pleaded additional affirmative defenses, including usury, estoppel, duress, waiver, and payment. Appellants also pleaded two additional counterclaims, including usury and "failure to pay interest."

In their eighth issue, appellants point out that PCB did not move for summary judgment on their additional affirmative defenses nor address them in an amended or supplemental motion for summary judgment. *See Vertex Servs., LLC*, 583 S.W.3d at 852; *Blancett*, 177 S.W.3d at 592. However, affirmative defenses are not causes of action or claims seeking relief. Instead, "[t]he nature of an affirmative defense is one of confession and avoidance." *See Izen v. Laine*, 614 S.W.3d 775, 790–91 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). "An affirmative defense does not advance the claims of the party asserting it; it instead defeats the opponent's claim." *Id.* "If the defendant is doing nothing more than resisting the plaintiff's recovery, the pleading cannot be construed as requesting affirmative relief." *Id.* Here, the additional affirmative defenses pleaded by appellants included usury, estoppel, duress, waiver, and payment. However, the record demonstrates that appellants did not plead any facts regarding the basis of these affirmative defenses, and merely pleaded that they were asserting those affirmative defenses. With respect to these additional affirmative defenses, appellants did nothing more than resist PCB's deficiency claim, and therefore we cannot construe appellants' affirmative defenses as claims for relief. *See id.* Accordingly, with respect to the

40

referenced additional affirmative defenses, we conclude the trial court did not grant summary judgment on claims not addressed in PCB's combined motion for summary judgment. *See G&H Towing*, 347 S.W.3d at 297. We overrule appellants' eighth issue.

In contrast, appellants in their ninth issue correctly point out that PCB did not move for summary judgment on the additional counterclaims raised by appellants in its combined motions for summary judgment, nor did PCB address these new counterclaims in an amended or supplemental motion for summary judgment. *See Vertex Servs., LLC*, 583 S.W.3d at 852; *Blancett*, 177 S.W.3d at 592. To the extent that PCB addressed appellees' "allegations" of usury, PCB addressed those "allegations" in its reply brief to appellees' response, which PCB may not do. *See Vertex Servs., LLC*, 583 S.W.3d at 852; *Blancett*, 177 S.W.3d at 592. Because the trial court's judgment granted PCB's traditional and no-evidence motions for summary judgment "in all respects," and "finally dispose[d] of all parties and all claims," the trial court, in effect, disposed of the additional counterclaims not addressed by PCB's combined motions for summary judgment, and is therefore erroneous. *See G&H Towing Co.*, 347 S.W.3d at 297; *Lehmann*, 39 S.W.3d at 200; *Cooper*, 325 S.W.3d at 769.

This type of error is generally reversible, but the Texas Supreme Court has held that the error is harmless "when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *See G&H Towing Co.*, 347 S.W.3d at 297–98 (citing TEX. R. APP. P. 44.1(a)). Similarly, when the summary judgment movant fails to amend its motion after the nonmovant amends its petition, the summary judgment can still be affirmed if (1) the amended petition essentially reiterates previously pleaded causes of action, (2) a ground asserted in the motion for summary judgment conclusively

negates a common element of the newly and previously pleaded claims, or (3) the original motion is broad enough to encompass the newly asserted claims. *See Garcia v. Lloyds*, 514 S.W.3d 257, 263 (Tex. App.—San Antonio 2016, pet. denied); *Callahan*, 397 S.W.3d at 350; *Coterill–Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Tr.*, 383 S.W.3d 581, 592 (Tex. App.–Houston [14th Dist.] 2012, pet. denied). However, if "a plaintiff, in her amended petition, asserts a new cause of action based on facts not alleged in the original petition, a court cannot say the defendant's motion for summary judgment contemplated and embraced the additional claim in the amended petition." *See Espeche v. Ritzell*, 123 S.W.3d 657, 664 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

PCB argues that appellants' usury claim was "based on the same set of operative facts before the [trial] court." Specifically, PCB argues that the usury claim "is the same argument that [PCB] failed to account by attaching a ledger as was made in [a]ppellants' other claim." We disagree. Appellants pleaded facts pertaining to their usury counterclaim that were not alleged in appellants' original answer and counterclaim.[8] Therefore, we cannot conclude PCB's traditional and no-evidence motions for summary judgment contemplated and embraced the additional usury counterclaim. *See id.*

---

[8] Specifically, appellants alleged in their amended pleading that PCB possessed $455,000.00 of funds "it had obtained from the proceeds from the execution on the original judgment entered in this case on May 26, 2021" on July 7, 2023, the date Noack executed his affidavit. According to appellants, PCB held on to the funds after the judgment was reversed by this Court in the previous appeal of this case. *See Chrissos v. PlainsCapital Bank*, No. 13-21-00271-CV, 2022 WL 17492276 (Tex. App.—Corpus Christi–Edinburg Dec. 8, 2022, no pet.) (mem. op.) (reversing the trial court's death penalty sanctions where the conduct complained of could not be sufficiently attributed to the party). Appellants pleaded that PCB wire-transferred the funds to appellants' attorney on July 18, 2023, but averred that Noack's affidavit "failed to account for these funds" and that PCB "never compensated [appellants] for the interest on these funds that accrued upon reversal of the judgment by the Thirteenth Court of Appeals." According to appellants, the "demand or charge" of interest from Noack's affidavit constituted usury, and they were entitled to "recover the statutory damages set forth in Sections 305.001 and 305.002 of the Texas Finance Code, plus attorney's fees."

PCB did not address appellants' additional counterclaim of "failure to pay interest" in their brief. However, we similarly conclude that appellants pleaded facts pertaining to their "failure to pay interest" counterclaim that were not alleged in their original answer and counterclaim.[9] Therefore, we cannot conclude PCB's traditional and no-evidence motions for summary judgment contemplated and embraced the additional "failure to pay interest" counterclaim. *See id.* Accordingly, we cannot affirm the judgment with respect to the newly pleaded counterclaims. *See Garcia*, 514 S.W.3d at 263; *Callahan*, 397 S.W.3d at 350; *Coterill–Jenkins*, 383 S.W.3d at 592. We sustain appellants' ninth issue.

## V. ATTORNEY'S FEES

In their tenth and eleventh issues, appellants challenge the trial court's award of attorney's fees to PCB as well as the trial court's denial of appellants' objection to PCB's evidence pertaining to attorney's fees. Appellants argue that they objected to Barron's affidavit on the basis that the affidavit "failed to segregate the attorney's fees for matters on non-fee producing issues." According to appellants, because Barron's affidavit "failed to attest that all fees sought were from issues that allowed for recovery of attorney's fees," the trial court erred in denying their objection and erred in granting PCB an award of attorney's fees. We address these issues together.

"Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). "As a result, fee claimants have always been required to

---

[9] Specifically, appellants alleged in their amended pleading that they "would also show that [PCB] had possession and control of $455,000.00 belonging to them but failed to tender the interest earned on that money while it was in its possession since December of 2022, the date that the judgment was reversed on appeal."

43

segregate fees between claims for which they are recoverable and claims for which they are not." *Id.* "An exception exists only when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (quoting *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14). "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14. The party seeking recovery of attorney's fees bears the burden to demonstrate that segregation is not required. *Sustainable Tex. Oyster Res. Mgmt., LLC. v. Hannah Reef, Inc.*, 623 S.W.3d 851, 872 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

PCB argues that attorney's fees are collectable by contract and that segregation of fees in Barron's affidavit was not required because "there was nothing to segregate." In the signed promissory note, appellants promised "to pay reasonable attorney's fees and . . . other costs if this note is placed in the hands of an attorney to collect or enforce the note." Similarly, in the signed deed of trust, appellants agreed "to pay reasonable attorney's fees, trustee's fees, and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement." We agree that PCB was authorized by contract to recover attorney's fees with respect to their deficiency claim. However, PCB did not just prevail on its deficiency claim, but also on appellants' counterclaims of fraud and fraud by nondisclosure. PCB does not address in its brief whether segregation was required as to those counterclaims, and therefore we conclude that PCB has not demonstrated that segregation was not required. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 311; *Hannah Reef, Inc.*, 623 S.W.3d at 872. Settled

Texas law disallows recovery of attorney's fees for fraud claims. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 310. Furthermore, the Texas Supreme Court has rejected an exception to that rule even if issues involving contract and fraud theories are "inextricably intertwined" in the case. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666–67 (Tex. 2009); *see also Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313 ("Intertwined facts do not make tort fees recoverable.").

Accordingly, we conclude the trial court erroneously denied appellants' objection to Barron's affidavit and in awarding PCB attorney's fees. We sustain appellants' tenth and eleventh issues.

## VI.    SCOPE OF REMAND

Having addressed each of appellants' issues and sub-issues, we now consider the proper disposition of this appeal. As mentioned supra, the trial court granted summary judgment in favor of PCB, awarding damages, attorney's fees, post-judgment interest, and court costs. Although we have overruled most of appellants' issues, we have held that the trial court reversibly erred when it granted summary judgment on appellants' additional counterclaims of usury and failure to pay interest. Accordingly, we must determine the scope of our remand for further proceedings in the trial court. *See* TEX. R. APP. P. 43.2(d).

Under Texas Rule of Appellate Procedure 44.1(b), "[i]f the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error." TEX. R. APP. P. 44.1(b); *see also Lifshutz v. Lifshutz*, 199 S.W.3d 9, 20 (Tex. App.—San Antonio 2006, pet. denied) ("When [an appellate court] remands a case and

45

limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue." (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). We conclude that appellants' additional counterclaims of usury and "failure to pay interest" can be separately addressed in a new trial without unfairness to either party.

Furthermore, we have sustained appellants' issue regarding PCB's award of attorney's fees. However, PCB's failure to demonstrate that segregation was not required does not mean it cannot recover any. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314. "Unsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Id.* Accordingly, we reverse the trial court's award of attorney's fees and remand PCB's request for such an award for a new trial.[10] *See id.*

### VII. CONCLUSION

Having sustained appellants' tenth and eleventh issues, we reverse the trial court's judgment in part and remand the case to the court for further proceedings on appellants' counterclaims of usury and "failure to pay interest" as well as PCB's request for attorney's fees. TEX. R. APP. P. 43.2(d), 44.1(b). The remainder of the judgment is affirmed.

CLARISSA SILVA
Justice

Delivered and filed on the
13th day of November, 2025.

---

[10] Our remand does not preclude the filing of appropriate motions that may resolve the remaining issues without another trial.

46